[No. 31262-6-I.    Division One.    July 12, 1993.]

THE CITY OF SEATTLE, *Respondent,* v. ROBERT C. HEATLEY, *Petitioner.*

*Constance M. Krontz* of *Washington Appellate Defender Association,* for petitioner.

*Mark H. Sidran, City Attorney,* and *Jeanne S. Innis, Assistant,* for respondent.

AGID, J. — Petitioner Robert Heatley seeks discretionary review of a RALJ decision affirming his convictions in Seattle Municipal Court for driving while intoxicated and negligent driving. A commissioner referred the motion for discretionary review to a panel of judges for determination. Because the issues raised are of public interest, RAP 2.3(d)(3), we grant the motion for discretionary review, accelerate review pursuant to RAP 18.12, and affirm.

Heatley was charged in Seattle Municipal Court with reckless driving and driving while under the influence of intoxicating liquor (DWI). Seattle Municipal Code (SMC) § 11.56.120, .020(A)(1). Police Officer Patricia Manning testified that at about 11 p.m. on February 27, 1990, she observed Heatley's car drive through a stop sign at 20 to 25 m.p.h. and then turn south on 12th Avenue. Manning followed Heatley as he drove 50 to 55 m.p.h. in a 30-m.p.h. zone. Heatley's car straddled the center line of the two southbound lanes of 12th Avenue. At times, the car would "jerk" into the inside lane and then swerve back over the center line.

After following Heatley for about 11 to 12 blocks, Manning turned on her flashing lights, and Heatley immediately pulled over to the side of the street. When asked why he was speeding and driving in both lanes, Heatley replied that it was safer to drive in both lanes and that he was trying to keep away from cars parked at the side of the road. According to Manning, Heatley's eyes were watery and bloodshot,

his speech was "slightly slurred", he had a "strong odor of alcohol on his breath and about him", and he "appeared to be slightly off balance when he walked." Heatley also became hostile and verbally abusive during his encounter with the officer.

Manning called for the DWI unit. Approximately 5 minutes later, Officer Mark Evenson of the DWI squad arrived. Evenson also observed that Heatley's eyes were bloodshot and watery, his face was flushed, his "balance was unsteady" and that he had a "strong odor" of alcohol on his breath. Evenson characterized Heatley's speech as slurred but not incoherent.

At Evenson's request, Heatley agreed to perform a series of field sobriety tests. Heatley was able to recite the complete alphabet and count backward from 59, albeit with slurred speech. When Heatley performed a balance test in which he stood straight, with his feet together, eyes closed and head held back, Evenson observed that Heatley had a "two inch sway". Heatley then stood straight and raised one leg for 30 seconds. On this test, he had a "very obvious sway", with "a lot of body jerking to try to keep his balance." Heatley was able to touch his nose with the tip of his finger, again with an "obvious sway". On the heel-toe walking test, he was unable to follow instructions exactly and lost his balance several times.

At trial, Officer Evenson estimated that he had conducted field sobriety tests on about 1,500 drivers to determine whether they had consumed sufficient alcohol "to impair their driving to a point where they cannot drive in a safe manner." When asked his opinion of the "defendant's impairment due to his use of alcohol", Evenson replied without objection:

> Based on my, his physical appearance and my observations of that and based on all the tests I gave him as a whole, I determined that Mr. Heatley was obviously intoxicated and affected by the alcoholic drink that he'd been, he could not drive a motor vehicle in a safe manner. At that time, I did place Mr. Heatley under arrest for DWI.

After Heatley was arrested and brought to the precinct, he acknowledged that he had consumed two beers and one shot of vodka between 7:30 and 8:45 p.m. Heatley did not testify at trial.

The jury found Heatley guilty on the DWI charge, not guilty of reckless driving, and guilty of the lesser included offense of negligent driving. He appealed to the Superior Court which affirmed, concluding that Heatley had "waived any error by failing to object to Officer Evenson's testimony either before trial or during his testimony."

Heatley first contends that the trial court erred in admitting Officer Evenson's testimony that he was "obviously intoxicated" and "could not drive a motor vehicle in a safe manner." The primary issue before the jury was whether Heatley was driving a motor vehicle while "under the influence of or affected by the use of intoxicating liquor". Instruction 10. The jury was instructed that a person is "under the influence of or affected by" alcohol when "his ability to operate his automobile is lessened in any appreciable degree." Instruction 11. Heatley argues that, because Officer Evenson's opinion encompassed what was essentially the only disputed issue, it was an improper opinion that he was guilty of the DWI charge. We disagree.

The general rule is that no witness, lay or expert, may "testify to his opinion as to the guilt of a defendant, whether by direct statement or inference." *State v. Black*, 109 Wn.2d 336, 348, 745 P.2d 12 (1987); *see also State v. Garrison*, 71 Wn.2d 312, 427 P.2d 1012 (1967). Such testimony has been characterized as unfairly prejudicial because it "invad[es] the exclusive province of the finder of fact." *Black*, 109 Wn.2d at 348. Improper opinions on guilt usually involve an assertion pertaining directly to the defendant. *See, e.g., Garrison*; *cf. State v. Carlin*, 40 Wn. App. 698, 700, 700 P.2d 323 (1985) (police officer testified that tracking dog followed defendant's "fresh guilt scent"). Because issues of credibility are reserved strictly for the trier of fact, testimony regarding the credibility of a key witness may also be improper. *See, e.g., State v.*

*Alexander*, 64 Wn. App. 147, 154, 822 P.2d 1250 (1992) (by stating his belief that child was not lying about sexual abuse, expert "effectively testified" that defendant was guilty as charged); *see also Black*, 109 Wn.2d at 349 (in rape case, expert testimony that victim suffered from rape trauma syndrome constituted "in essence" a statement that defendant was guilty where defense was consent).

■ However, testimony that is not a direct comment on the defendant's guilt or on the veracity of a witness, is otherwise helpful to the jury, and is based on inferences from the evidence is not improper opinion testimony. In *State v. Sanders*, 66 Wn. App. 380, 832 P.2d 1326 (1992), a prosecution for possession of cocaine with intent to deliver, a police officer opined that the lack of drug user paraphernalia in the defendant's home indicated the occupants did not use drugs regularly. This court rejected the claim that the testimony amounted to an opinion on guilt because the officer did not explicitly state an opinion on guilt or credibility, the testimony was based solely on physical evidence and on the officer's experience, and the testimony was not inconsistent with the defendant's testimony. *Sanders*, 66 Wn. App. at 388-89; *see also State v. Jones*, 59 Wn. App. 744, 801 P.2d 263 (1990) (in manslaughter case, an expert's opinion based on physical evidence that injuries not accidental did not constitute inadmissible opinion on guilt), *review denied*, 116 Wn.2d 1021 (1991).

Heatley correctly asserts that Officer Evenson's testimony here encompassed ultimate factual issues that are resolved by the trier of fact. Under modern rules of evidence, however, an opinion is not improper merely because it involves ultimate factual issues. ER 704 provides that "[t]estimony in the form of an opinion or inferences otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."[1] Thus, opinion testimony may not be excluded under ER 704 on the basis that it encom-

---

[1] ER 704 is essentially identical to Fed. R. Evid. 704(a). The Advisory Committee's Note on Fed. R. Evid. 704 states that, under modern rules of evidence, the basic approach to lay and expert opinions "is to admit them when helpful to the trier of fact." 3 J. Weinstein & M. Berger, *Evidence* ¶ 704-3 (1991).

passes ultimate issues of fact. However, it must be "otherwise admissible" and is therefore subject to the requirements of ER 403, ER 701, and ER 702. *Jones,* 59 Wn. App. at 750 n.2; *State v. Allen,* 50 Wn. App. 412, 417 n.1, 749 P.2d 702, *review denied,* 110 Wn.2d 1024 (1988); *see also* ER 704 Judicial Council Comment; *United States v. Boney,* 977 F.2d 624 (D.C. Cir. 1992). An opinion which lacks proper foundation or is not helpful to the trier of fact is not admissible under ER 701 or ER 702. An otherwise admissible opinion may be excluded under ER 403 if it is confusing, misleading, or if the danger of unfair prejudice outweighs its probative value.

■ ■ Whether testimony constitutes an impermissible opinion on guilt or a permissible opinion embracing an "ultimate issue" will generally depend on the specific circumstances of each case, including the type of witness involved, the specific nature of the testimony, the nature of the charges, the type of defense, and the other evidence before the trier of fact. *See generally Sanders.* The trial court must be accorded broad discretion to determine the admissibility of ultimate issue testimony, *Jones,* 59 Wn. App. at 751, and this court has expressly declined to take an expansive view of claims that testimony constitutes an opinion on guilt. *See State v. Wilber,* 55 Wn. App. 294, 298, 777 P.2d 36 (1989) (analyzing officers' testimony that "inferentially" constituted opinion on guilt as expert testimony under ER 702).

Officer Evenson's testimony contained no direct opinion on Heatley's guilt or on the credibility of a witness. The fact that an opinion encompassing ultimate factual issues *supports* the conclusion that the defendant is guilty does not make the testimony an improper opinion on guilt. "[I]t is the very fact that such opinions imply that the defendant is guilty which makes the evidence relevant and material." *Wilber,* 55 Wn. App. at 298 n.1. More important, Evenson's opinion was based solely on his experience and his observation of Heatley's physical appearance and performance on the field sobriety tests. The evidentiary foundation "directly and logically" supported the officer's conclusion. *Allen,* 50 Wn. App. at 418; *see also Sanders,* 66 Wn. App. at 388.

Under these circumstances, the testimony did not constitute an opinion on guilt.

Evenson's opinion that Heatley was intoxicated and impaired to the extent that he could not drive safely was also "otherwise admissible" within the meaning of ER 704. It has long been the rule in Washington that a lay witness may express an opinion on the degree of intoxication of another person where the witness has had an opportunity to observe the affected person. *See, e.g., State v. Forsyth,* 131 Wash. 611, 612, 230 P. 821 (1924) (in prosecution for driving while intoxicated, "[i]t was not a question upon which only an expert could express an opinion" (quoting *State v. Dolan,* 17 Wash. 499, 50 P. 472 (1897) (trial court erred in not allowing witness to testify as to whether defendant was so intoxicated he did not know what he was doing))).

■ We also reject the argument that Officer Evenson's opinion is inadmissible because, as an experienced officer who had made hundreds of DWI arrests, he was an expert. We agree with the court in *State v. Murphy,* 451 N.W.2d 154 (Iowa 1990), which concluded that, if a lay witness may express an opinion regarding the sobriety of another, there is no logic to limiting the admissibility of an opinion on intoxication when the witness is specially trained to recognize characteristics of intoxicated persons.

The effects of alcohol "are commonly known and all persons can be presumed to draw reasonable inferences therefrom". *State v. Smissaert,* 41 Wn. App. 813, 815, 706 P.2d 647, *review denied,* 104 Wn.2d 1026 (1985). However, even when we assume that the factfinder is generally knowledgeable about a topic, expert testimony may still be of assistance to an understanding of the issue. *Swartley v. Seattle Sch. Dist. 1,* 70 Wn.2d 17, 22, 421 P.2d 1009 (1966); ER 702. Under the facts of this case, to the extent Officer Evenson could be said to be testifying as an expert witness, his opinion was of assistance to the trier of fact because it stated the conclusions he had drawn from his observations of the defendant.

■ It is highly unlikely that Officer Evenson's testimony confused or improperly influenced the jury. The opinion was not framed in conclusory terms that merely parroted the relevant legal standard. *Cf. State v. Maurer*, 409 N.W.2d 196, 198 (Iowa Ct. App. 1987) (reversible error where officer testified that, based on his observations of defendant, " 'it is my opinion beyond any reasonable doubt that the defendant was operating a motor vehicle . . . while he was under the influence of an alcoholic beverage . . .' "). Evenson's testimony that Heatley was "obviously intoxicated", "affected" by alcohol, and could not drive "in a safe manner" was similar to but not identical to the legal standards set forth in the jury instructions.[2] As the City notes, unsafe driving is not an element of driving under the influence.

The subject matter of Evenson's opinion — intoxication and impairment by alcohol — did not encompass excessively technical matters. *See Forsyth; cf. Sanders.* The relevant concepts were described in words having their ordinary meaning. *See United States v. Hearst*, 563 F.2d 1331, 1351 (9th Cir. 1977) (terms "voluntarily rob a bank" and "act under fear of death or grave bodily harm" would be understood by average person in same sense as intended by expert testimony), *cert. denied*, 435 U.S. 1000 (1978). Thus, there is no basis for concluding that the similarity between Evenson's testimony on the ultimate factual issues and the legal standards contained in the jury instructions was confusing to the trier of fact. *See* 5A K. Tegland, Wash. Prac., *Evidence* § 309, at 473 (3d ed. 1989); *see also* 3 J. Weinstein & M. Berger, *Evidence* ¶ 704 (1991).

■ Finally, as we indicated above, Evenson's opinion was based on his detailed testimony about his observations of Heatley's physical condition and performance on the field sobriety tests. The jury was therefore in a position to independently assess the opinion in light of the foundation evi-

---

[2]Courts have noted that terms such as "intoxicated" and "under the influence" are essentially synonymous. *See State v. Norton*, 134 Vt. 100, 102, 353 A.2d 324, 325 (1976) (rejecting defendant's contention that term "intoxicated" is permissible but phrase "under the influence" is not).

dence. Officer Evenson was available for cross examination, and the jury was instructed that it was the sole judge of credibility and the weight to be accorded the testimony of each witness. Under these circumstances, nothing in the record suggests that the testimony was unfairly prejudicial, *i.e.*, that it persuaded the jury to abdicate its responsibility and decide the case on a basis other than the evidence and the pertinent law. We hold that, where the testimony is supported by proper foundation, the trial court has discretion to admit opinion testimony on the degree of intoxication in a prosecution for driving while under the influence.[3]

Heatley also contends that Evenson's testimony that he could not drive "in a safe manner" constituted an opinion of guilt on the negligent driving charge. However, it was clear from the testimony that Evenson did not observe Heatley's driving, and the jury therefore could not have applied that comment to the negligent driving charge. Viewed in context, Evenson's statement referred only to his assessment of Heatley's intoxication for purposes of determining whether to arrest him for driving while under the influence. The testimony cannot reasonably be understood as even referring to the negligent driving charge, much less as an opinion of Heatley's guilt on that charge.[4]

---

[3]Courts in other jurisdictions have generally upheld the admission of opinion testimony similar to Officer Evenson's as being within the discretion of the trial court. *See, e.g., State v. Bruskie*, 536 A.2d 522 (R.I. 1988); *Long v. State*, 284 Ark. 21, 680 S.W.2d 686 (1984); *State v. Zumbo*, 157 Vt. 589, 601 A.2d 986 (1991). In dicta, the court in *Fuenning v. Superior Court*, 139 Ariz. 590, 680 P.2d 121 (1983) urged caution in permitting opinion testimony by an officer in a DWI prosecution to the effect that the defendant was "drunk", "under the influence", or "intoxicated". While indicating its view that the prejudicial effect of such testimony generally outweighed its probative value, the *Fuenning* court clearly recognized that admission of such evidence is discretionary. *Fuenning*, at 605; *see also State v. Carreon*, 151 Ariz. 615, 729 P.2d 969 (1986) (concluding that the *Fuenning* dicta did not establish a per se rule of exclusion).

[4]Heatley also contends that he was denied effective assistance by counsel's failure to object to Officer Evenson's improper opinion testimony. However, because the testimony was not an opinion on guilt, trial counsel's failure to object on this basis cannot constitute deficient performance. *See State v. Madison*, 53 Wn. App. 754, 770 P.2d 662, *review denied*, 113 Wn.2d 1002 (1989).

Heatley also contends that the Superior Court erred in ruling that he had waived any challenge to the officer's testimony by failing to object at trial. Citing *State v. Carlin*, 40 Wn. App. 698, 700 P.2d 323 (1985), Heatley contends that the admission of an opinion on a criminal defendant's guilt is a "manifest error affecting a constitutional right" under RAP 2.5(a)(3) that may be raised for the first time on appeal. We have determined that the challenged testimony here did not constitute an opinion on guilt and need not resolve this contention. However, because this is a frequently recurring issue, we take this opportunity to reject *Carlin* to the extent it can be interpreted as holding that the admission of testimony alleged to constitute an opinion on guilt is an error of constitutional magnitude that may automatically be raised for the first time on appeal under RAP 2.5(a)(3).

In *Carlin*, a police officer testified without objection that a police dog had located the defendant by following a "fresh guilt scent". 40 Wn. App. at 700. On appeal, this court held that the "expression of an opinion as to a criminal defendant's guilt violates his constitutional right to a jury trial" by "invading the province of the impartial fact finder." *Carlin*, 40 Wn. App. at 701-02. However, *Carlin* provides no analysis and cites no relevant authority for the proposition that this is the type of "manifest error" contemplated by RAP 2.5(a)(3).[5]

Moreover, the court in *Carlin* did not expressly decide that the "fresh guilt scent" testimony actually constituted an

---

[5]The assertion that a witness's testimony "invades the province of the trier of fact" is of little assistance in assessing the effect of an alleged evidentiary error. *Cf.* 3 J. Weinstein & M. Berger, *supra* at 704-3, Advisory Committee's Note, Fed. R. Evid. 704 ("The basis usually assigned for the [ultimate issue] rule, to prevent the witness from 'usurping the province of the jury,' is aptly characterized as 'empty rhetoric.' ") (quoting 7 J. Wigmore, *Evidence* § 1920, at 17 (1978)). Jurors always remain free to draw their own conclusions. 3 J. Weinstein & M. Berger, *supra* at 704-7. Rather, the effect of erroneously admitted evidence must be judged in the specific context in which it is offered. Thus, where an expert's testimony is admitted without proper foundation, the "aura of special reliability" may create the danger of unfair prejudice. *Black*, 109 Wn.2d at 349 (quoting *State v. Saldana*, 324 N.W.2d 227 (Minn. 1982)).

opinion on the defendant's guilt. *See Carlin*, 40 Wn. App. at 703 (testimony "arguably" was an improper opinion). Instead, the court held that even if the testimony was error, it was harmless beyond a reasonable doubt. *Carlin*, 40 Wn. App. at 705. This approach, which eschews analysis of whether the claimed error is "truly of constitutional magnitude", has been superseded by decisions beginning with *State v. Scott*, 110 Wn.2d 682, 757 P.2d 492 (1988), attempting to give meaning to the concept of a "manifest" constitutional error that will be reviewed for the first time on appeal.

In *Scott*, the Supreme Court was asked to determine whether the trial court's failure to define "knowledge" for the jury was a manifest constitutional error which could be raised for the first time on appeal. It rejected the argument that all trial errors which implicate a constitutional right are reviewable under RAP 2.5(a)(3), noting that "[t]he exception actually is a narrow one, affording review only of 'certain constitutional questions'." 110 Wn.2d at 687.

In *State v. Madison*, 53 Wn. App. 754, 770 P.2d 662, *review denied*, 113 Wn.2d 1002 (1989), an expert witness testified, without objection, that a young child's conduct was "typical of a sex abuse victim". The court rejected the appellant's contention that the testimony amounted to a statement of belief in the victim's story and, consequently, an opinion on the defendant's guilt. *Madison*, 53 Wn. App. at 760. After acknowledging that certain statements of the expert would have been properly excluded if challenged at trial, the court indicated its general reluctance to recognize the general *type* of error as a manifest constitutional error:

> Appellate courts are and should be reluctant to conclude that questioning, to which no objection was made at trial, gives rise to "manifest constitutional error" reviewable for the first time on appeal. The failure to object deprives the trial court of an opportunity to prevent or cure the error. The decision not to object may be a sound one on tactical grounds by competent counsel, yet if raised successfully for the first time on appeal, may require a retrial with all the attendant unfortunate consequences. Even worse, and we explicitly are not referring to counsel in this case, it may permit defense counsel to deliber-

ately let error be created in the record, reasoning that while the harm at trial may not be too serious, the error may be very useful on appeal.

*Madison*, 53 Wn. App. at 762-63; *accord, State v. Stevens*, 58 Wn. App. 478, 486, 794 P.2d 38 (alleged error in admission of opinion testimony was not "truly of constitutional magnitude"), *review denied*, 115 Wn.2d 1025 (1990).

Later, in *State v. Lynn*, 67 Wn. App. 339, 835 P.2d 251 (1992), this court expanded upon *Scott* in holding that the State's failure to establish a witness's unavailability for purposes of admitting hearsay statements under ER 804(b)(3) was not "a manifest error affecting a constitutional right". In so doing, the *Lynn* court concluded

> that the proper approach in analyzing alleged constitutional error raised for the first time on appeal involves four steps. First, the reviewing court must make a cursory determination as to whether the alleged error in fact suggests a constitutional issue. Second, the court must determine whether the alleged error is manifest. Essential to this determination is a plausible showing by the defendant that the asserted error had practical and identifiable consequences in the trial of the case. Third, if the court finds the alleged error to be manifest, then the court must address the merits of the constitutional issue. Finally, if the court determines that an error of constitutional import was committed, then, and only then, the court undertakes a harmless error analysis.

67 Wn. App. at 345. We agree with and adopt this approach.

■ The decision to admit or exclude opinion testimony generally involves the routine exercise of discretion by the trial court under, among other rules, ER 401, 403, 701, 702 and 704. These rules govern evidentiary questions that do not necessarily implicate constitutional rights. *See State v. Trader*, 54 Wn. App. 479, 484, 774 P.2d 522 (contention that admission of polygraph evidence violated defendant's "right to a fair trial" insufficient to invoke RAP 2.5(a)(3)), *review denied*, 113 Wn.2d 1027 (1989); *see also Wilber*, 55 Wn. App. at 299 (erroneous admission of expert testimony under ER 702 is not of constitutional magnitude); *State v. Chase*, 59 Wn. App. 501, 508, 799 P.2d 272 (1990) (errors under ER 403 are not of constitutional magnitude and cannot be raised

under RAP 2.5(a)). Accordingly, we reject *Carlin* to the extent it is read as holding that a claim that testimony is an opinion on guilt necessarily alleges a manifest constitutional error that will be considered for the first time on appeal under RAP 2.5(a).

Judgment affirmed.

PEKELIS, A.C.J., and SCHOLFIELD, J., concur.

Review denied at 123 Wn.2d 1011 (1994).