FILED
COURT OF APPEALS
DIVISION II

2013 SEP 17 AM 8: 40

STATE OF WASHINGTON

BY_____
DEPUTY

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43180-7-II |
| Respondent, | |
| v. | |
| ARTHUR F. KERCHER III, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, A.C.J. — Arthur F. Kercher III, appeals his bench trial conviction for failure to register as a sex offender claiming (1) improper opinion testimony, (2) prosecutorial misconduct, (3) reliance on inadmissible impeachment evidence, and (4) insufficient evidence to sustain his conviction. Of the claims he preserved for review, Kercher demonstrates no error, and accordingly, we affirm his conviction.

## FACTS

In 2007, Kercher was convicted of second degree rape, RCW 9A.44.050. As a result, he must register his home address with the Pierce County Sheriff. On March 11, 2011, when Puyallup Police Detective Joseph Pihl performed a registration verification check, Kercher's registered home address was at the Puyallup residence of his father, Arthur F. Kercher Sr.[1] Only Kercher's sister and brother, Lauren and Josh Kercher, were at the address when Detective Pihl arrived.

---

[1] The appellant and his father share the same name. For clarity, we refer to the appellant as "Kercher" and his father as "Arthur."

Lauren provided Detective Pihl a written statement: "My brother, Arthur Kercher, has moved out about two months ago and is currently staying with his mother, Erin [Taggart]. He moved out with a friend DJ, but shortly after that, he moved in with his mom." 1 Verbatim Report of Proceedings (VRP) at 56. During the verification check, Detective Pihl also telephoned Arthur, who said that Kercher had moved out "approximately two months prior." 2 VRP at 120. Detective Pihl then reported that Kercher had "absconded," or no longer lived at his registered address. 1 VRP at 45. As a result, the State charged Kercher with failure to register as a sex offender, RCW 9A.44.132.

At a bench trial, Lauren's testimony was less definitive than her written statement, which the trial court admitted into evidence and from which Lauren read during her testimony. She testified that even if she had not seen Kercher at home for two months, he might still have lived there. Arthur testified that he was uncertain when Kercher actually moved to Taggert's home because Kercher had been slowly moving his belongings from one house to the other. Arthur explained that he thought Kercher told him that he was moving out a day or two before Detective Pihl's visit. Taggert thought Kercher had moved in with her after his March 17 birthday, but Kercher actually registered at Taggart's address on March 14.

Detective Pihl testified about what he observed during his verification check at Arthur's home, his experience, and the manner in which he typically conducts these checks. Detective Pihl also testified in rebuttal that Arthur's March 11 representations differed dramatically from those he offered at trial. Kercher objected, and the State expressed its intent to use Arthur's prior inconsistent statements only for impeachment purposes. Then during closing arguments, the

State drew attention to the discrepancies between Arthur's March 11 phone conversation and his trial testimony.

The trial court entered findings of fact and conclusions of law, and it found Kercher guilty of failing to register as a sex offender. Kercher appeals.

## ANALYSIS

### I. OPINION TESTIMONY

Kercher claims, for the first time on appeal, that Detective Pihl improperly offered opinion testimony, stating his personal belief that Kercher was guilty. Even assuming Kercher preserved this issue for appeal, Detective Pihl's testimony was not improper opinion evidence.

#### A. Standard of Review and Rules of Law

Generally, parties may not claim errors for the first time on appeal. *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007). Appellants may raise a claim for the first time on appeal if it is a "manifest error affecting a constitutional right." RAP 2.5(a)(3). But "[a]dmission of witness opinion testimony on an ultimate fact, without objection, is not automatically reviewable as a 'manifest' constitutional error." *Kirkman*, 159 Wn.2d at 936. To merit appellate review in these circumstances, a defendant must show that the alleged error caused "actual prejudice" or "practical and identifiable consequences" at his trial. *Kirkman*, 159 Wn.2d at 935.

No witness, whether an expert or a lay person, may "testify to his opinion as to the guilt of a defendant, whether by direct statement or inference." *State v. Black*, 109 Wn.2d 336, 348, 745 P.2d 12 (1987). The fact that a witness's testimony makes the defendant's guilt more likely, however, shows that the testimony is relevant. *See* ER 401. It does not mean the testimony was necessarily improper. *City of Seattle v. Heatley*, 70 Wn. App. 573, 578, 854 P.2d 658 (1993),

*review denied*, 123 Wn.2d 1011 (1994). "[T]estimony that is not a direct comment on the defendant's guilt or on the veracity of a witness, is otherwise helpful to the [trier of fact], and is based on inferences from the evidence is not improper opinion testimony." *Heatley*, 70 Wn. App. at 578.

Lay witnesses may give opinions and make inferences based upon rational perceptions that will assist the trier of fact in understanding the witness's testimony and that are not based on scientific or specialized knowledge. *State v. Montgomery*, 163 Wn.2d 577, 591, 183 P.3d 267 (2008). So, a witness may properly express his opinion on a material issue of fact as long as the witness does not tell the trier of fact what conclusion to reach. *Montgomery*, 163 Wn.2d at 591.

B. Analysis

Here, though he raised no trial objection, Kercher claims constitutional error on appeal, his right to a fair trial. He claims that two of Detective Pihl's statements caused actual prejudice: (1) his statement that, "If we believe that the person is not still living at the address, we refer that to the prosecutor's office," and (2) his classification of Kercher as "absconded." 1 VRP at 36, 45. Assuming, without deciding, that Kercher preserved this issue for appeal, Kercher's argument fails because Detective Pihl's testimony was not improper opinion testimony.

After visiting Kercher's registered address, Detective Pihl classified Kercher as "absconded" or "not in compliance" with registration requirements. 1 VRP at 45. He made this classification after phoning Arthur and taking Lauren's written statement that explained that Kercher had moved out two months earlier. Detective Pihl also described what he observed at Arthur's home, his experience, and how he typically conducts registration verification checks.

All of these factors contributed to Detective Pihl's opinion that Kercher no longer lived at his registered address.

> As Division One of this court held in *Heatley*:
>
> The fact that an opinion encompassing ultimate factual issues *supports* the conclusion that the defendant is guilty does not make the testimony an improper opinion on guilt. More important, [the officer's] opinion was based solely on his experience and his observation . . . The evidentiary foundation "directly and logically" supported the officer's conclusion. Under these circumstances, the testimony did not constitute an opinion on guilt.

*Heatley*, 70 Wn. App. at 579-80 (citations omitted). Here, Kercher claims that because Detective Pihl classified him as "having 'absconded,'" his testimony was an improper opinion on Kercher's guilt. But, Detective Pihl rationally based this classification on his experience, observations during the verification check, and Lauren's written statement. This evidence supports Detective Pihl's classification and, as in *Heatley*, it does not constitute an improper opinion.

## II. PROSECUTORIAL MISCONDUCT

Kercher argues that the prosecutor, during closing argument, committed misconduct by improperly inviting the trial court to rely on impeachment evidence, Arthur's March 11 telephone statements, as substantive evidence of guilt. Kercher, however, failed to preserve this issue for appeal.

### A. Standard of Review

To prevail on a prosecutorial misconduct claim, a defendant must show that in the context of the record and all the trial circumstances, the prosecutor's conduct was improper and prejudicial. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). To show prejudice, a

defendant must show a substantial likelihood that the misconduct affected the verdict. *Thorgerson*, 172 Wn.2d at 442-43. If a defendant fails to object to misconduct at trial, he fails to preserve the issue unless he establishes that the misconduct was so flagrant and ill intentioned that an instruction would not have cured the prejudice. *Thorgerson*, 172 Wn.2d at 443. We consider the prosecutor's alleged improper conduct in the context of the total argument, the issues in the case, the evidence addressed in the argument. *State v. Anderson*, 153 Wn. App. 417, 430, 220 P.3d 1273 (2009), *review denied*, 170 Wn.2d 1002 (2010).

B. Analysis

Kercher contends that the prosecutor erred by inviting the trial court to use Arthur's statements as substantive evidence of Kercher's guilt when the prosecutor argued in closing:

> Mr. Kercher, Senior, informed the officer that the defendant had moved out approximately two months prior and that initially he moved out with a friend but that hasn't worked out and so the defendant had then moved in with his mother.
> At no point in time during that conversation did Mr. Kercher Senior express any confusion to the detective about where his son was actually residing, and at no point in time during the conversation did Mr. Kercher Senior tell the detective that the defendant was still residing with him.

2 VRP at 123. Kercher did not object to this argument at trial. So, to raise this issue for the first time on appeal, he must show that the prosecutor's argument constituted flagrant and ill-intentioned conduct that resulted in an incurable prejudice. *See Thorgerson*, 172 Wn.2d at 443. But Kercher does not demonstrate how this argument constituted flagrant or ill-intentioned conduct. He does not even attempt to show how the argument invited the trial court to consider impeachment evidence for substantive evidence of guilt. The prosecutor first noted that Arthur initially informed Detective Pihl of his impressions regarding when Kercher moved out, and only later at trial did Arthur offer a much different account of his understanding as to when Kercher

moved. Kercher does not show how this argument was anything more than the prosecutor using impeachment evidence to undermine Arthur's credibility. Accordingly, Kercher does not demonstrate flagrant and ill-intentioned misconduct, so he did not preserve his prosecutorial misconduct claim for appeal.

### III. ALLEGED RELIANCE ON IMPEACHMENT EVIDENCE

Kercher next argues that the trial court improperly relied on impeachment evidence as substantive evidence to find Kercher guilty. We disagree.

### A. Standard of Review and Rules of Law

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). Hearsay evidence is, generally, inadmissible. ER 802. Evidence that would otherwise constitute inadmissible hearsay, however, may be admissible when offered for impeachment purposes to undermine a witness's credibility. *State v. Burke*, 163 Wn.2d 204, 219, 181 P.3d 1 (2008).

We presume that a trial judge, because she or he is knowledgeable about evidence rules, will separate admissible evidence from the inadmissible. *State v. Miles*, 77 Wn.2d 593, 601, 464 P.2d 723 (1970). This presumption is rebuttable, however, and may be overcome upon a showing that the trial court's verdict "is not supported by sufficient admissible evidence" or if the judge relied on inadmissible evidence to make essential findings that it, otherwise, would not have made. *State v. Read*, 147 Wn.2d 238, 245-46, 53 P.3d 26 (2002).

### B. Analysis

Here, during rebuttal, when the prosecutor questioned Detective Pihl about his phone conversation with Arthur, Kercher objected, and the State provided that it offered Detective

Pihl's testimony for impeachment purposes. Detective Pihl then testified that Arthur initially said that Kercher had moved out two months before their March 11 phone conversation. Because the State did not offer this testimony to prove the truth of the matter asserted—that Kercher failed to register after moving out of Arthur's home—but rather to impeach Arthur, the statement did not constitute hearsay. *See* ER 801.

We next analyze whether the trial court substantively relied on this impeachment evidence as substantive evidence of Kercher's guilt. Kercher identifies finding of fact XII, claiming that the trial court improperly relied upon Arthur's conversation with Detective Pihl as substantive evidence of guilt. Finding of fact XII states:

> That Lauren Kercher utilized a phone from within the residence to contact her father, Arthur Kercher, II. That Lauren then provided the phone to Detective Pihl. That Detective Pihl spoke with Arthur Kercher, II on the phone. That Arthur Kercher, II reported to Detective Pihl that defendant had moved out of his residence approximately two months prior, and that defendant had initially moved out to reside with a friend but that living arrangement did not work out. That Arthur Kercher, II then reported to Detective Pihl that defendant had moved in with his mother.

Clerk's Papers at 14. Though the trial court made a finding relating to Detective Pihl's phone conversation with Arthur, Kercher fails to show that the trial court improperly relied on the impeachment evidence as substantive evidence of Kercher's guilt.

In fact, contrary to Kercher's assertion that the trial court improperly relied on this evidence to find Kercher guilty, in announcing its decision, the trial court expressly stated, "the *State has to produce substantive evidence, not merely impeachment evidence,* suggesting that the defendant did not reside there at least for the three days or so prior to the time that he registered on March 14th." 2 VRP at 133 (emphasis added). Therefore, the record clearly demonstrates

that the trial court was mindful to use only valid evidence in drawing its legal conclusions. Kercher does not demonstrate how finding of fact XII proves that the trial court improperly relied on Detective Pihl's impeachment testimony as evidence of Kercher's guilt or that it led the trial court to make an "essential finding[ ] that it otherwise would not have made." *See Read*, 147 Wn.2d at 246. Accordingly, Kercher does not show a trial court error.

## IV. SUFFICIENCY OF THE EVIDENCE

Finally, Kercher argues that if the trial court had not erred in considering Detective Pihl's impeachment testimony and opinion testimony, insufficient evidence would remain to sustain Kercher's conviction. But because Kercher did not demonstrate that the trial court relied on any improper evidence, his sufficiency claim fails.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Johanson, A.C.J.

We concur:

_____
Penoyar, J.

_____
Fearing, J

9