# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 53595-5-II |
| Respondent, | |
| v. | |
| DANA NOREEN MATTSON-GRAHAM, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Dana Noreen Mattson-Graham appeals her conviction and sentence for third degree assault. Mattson-Graham argues that the trial court abused its discretion by allowing a police officer to provide improper opinion of guilt testimony during trial and by imposing a deoxyribonucleic acid (DNA) collection fee despite her indigency. We disagree and affirm.

## FACTS

One day in March 2019, Mattson-Graham entered a Shell station convenience store to buy a soda. The cashier at the store told Mattson-Graham that she was not allowed in the store and needed to leave. Mattson-Graham left the store and ultimately returned to her van, which was broken down in a large gravel parking lot on the property. Law enforcement eventually responded and arrested Mattson-Graham for trespassing. The State charged Mattson-Graham with third degree assault and second degree criminal trespass.

Detective Mathew Schlecht testified at trial as follows. When he arrived at the Shell station, he saw Mattson-Graham standing outside of her van about 10 to 15 yards from the Shell

station. Detective Schlecht contacted Mattson-Graham and placed her under arrest for criminal trespass. Mattson-Graham became extremely upset and started calling Detective Schlecht vulgar names and screaming that he was assaulting her. As Detective Schlecht sat her in the police car and attempted to put her seatbelt on, Mattson-Graham continued to yell and scream at Detective Schlecht and Sergeant Samuel Patrick, who had also arrived at the scene. Mattson-Graham then turned and kicked Detective Schlecht in the hip area. The officers then attempted to remove Mattson-Graham from the car to restrain her feet, but Mattson-Graham stuck her foot underneath the cage separating the back seat from the front seat. When asked if he would describe the kick "as a purposeful act," Detective Schlecht said, "Yes." Verbatim Report of Proceedings (VRP) at 61. Mattson-Graham did not object.

Sergeant Patrick also testified at trial. He recalled seeing Mattson-Graham's foot make contact with the upper portion of detective Schlecht's leg. The State asked Sergeant Patrick about his observations:

| | |
|---|---|
| [STATE]: | Now, when the defendant struck the deputy with her leg, was she—describe her body position in relation to Detective Schlecht. |
| [SGT. PATRICK]: | She was partially in the seat sitting down, and then she had to bring her feet up and kick out. |
| [STATE]: | Was she facing him? |
| [SGT. PATRICK]: | Partially. |
| [STATE]: | Was it an intentional kick? |
| [SGT. PATRICK]: | I believe so. |
| [STATE]: | Other than the kick, was she otherwise thrashing her limbs around? |
| [SGT. PATRICK]: | What she could. She was in cuffs. |
| [STATE]: | When she kicked the deputy, was that an attempt to keep him from grabbing her leg? |

VRP at 86.

Mattson-Graham objected to the State's question on the basis of speculation. The trial court sustained the objection, and the State asked, "Was the kick an intentional act?" VRP at 86. Sergeant Patrick responded, "It appeared to be." VRP at 86. Mattson-Graham objected on the basis of asked and answered. The trial court sustained this objection also. The State asked, "Was the kick an accident?" and Mattson-Graham objected again on the basis of speculation. VRP at 86. The trial court permitted Sergeant Patrick to answer. Sergeant Patrick testified, "It did not look like an accident." VRP at 87.

Mattson-Graham testified that she did not remember kicking Detective Schlecht and her feelings were hurt at the time. In her closing argument, Mattson-Graham argued that the discrepancies between Sergeant Patrick's, Detective Schlecht's, and Mattson-Graham's recollections of the kick raised a reasonable doubt as to her guilt on the assault charge.

The jury found Mattson-Graham guilty of third degree assault and not guilty of second degree criminal trespass. The trial court imposed legal financial obligations including a $500 victim assessment and a $100 DNA collection fee.

Mattson-Graham appeals her judgment and sentence.

ANALYSIS

I. OPINION TESTIMONY

Mattson-Graham argues that the trial court abused its discretion by permitting Sergeant Patrick to offer improper opinion of guilt testimony when he testified that he believed Mattson-Graham's kick was intentional. Because Mattson-Graham did not object to the testimony on this basis below and fails to show that a manifest constitutional error occurred, we hold that the issue is not preserved for appeal.

No. 53595-5-II

A.    *Legal Principles*

In general, appellate courts will not consider issues raised for the first time on appeal. *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007); *see* RAP 2.5(a). But a party can raise an error for the first time on appeal if it is a manifest error affecting a constitutional right. *Kirkman*, 159 Wn.2d at 926. The defendant must show that the constitutional error actually affected her rights at trial, thereby demonstrating the actual prejudice that makes an error "manifest" and allows review. *Kirkman*, 159 Wn.2d at 926-27.

"On appeal, a party may not raise an objection not properly preserved at trial absent manifest constitutional error. We adopt a strict approach because trial counsel's failure to object to the error robs the court of the opportunity to correct the error and avoid a retrial." *State v. Powell*, 166 Wn.2d 73, 82, 206 P.3d 321 (2009) (plurality opinion) (citations omitted); RAP 2.5(a)(3). We will not reverse the trial court's decision to admit evidence where it rejected the specific ground upon which the defendant objected and then, on appeal, the defendant argues for reversal based on an evidentiary rule not raised at trial. *Powell*, 166 Wn.2d at 82-83. An appellant may only assign error in this court on the specific ground of the evidentiary objection made at trial. *State v. Guloy*, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985).

Lay witnesses may give opinions or inferences based upon rational perceptions that help the jury understand the witness's testimony and that are not based upon scientific or specialized knowledge. *State v. Montgomery*, 163 Wn.2d 577, 591, 183 P.3d 267 (2008). Impermissible opinion testimony about the defendant's guilt violates the defendant's constitutional right to a jury trial, which includes a right to an independent determination of the facts by the jury.

4

*Kirkman*, 159 Wn.2d at 927. "Opinions on guilt are improper whether made directly or by inference." *State v. Quaale*, 182 Wn.2d 191, 199, 340 P.3d 213 (2014).

In determining the admissibility of opinion testimony, the trial court "will consider the circumstances of the case, including the following factors: (1) the type of witness involved, (2) the specific nature of the testimony, (3) the nature of the charges, (4) the type of defense, and (5) the other evidence before the trier of fact." *Quaale*, 182 Wn.2d at 199-200. Some topics are inappropriate for opinion testimony in criminal trials, including personal opinions as to the defendant's guilt, the intent of the accused, or the veracity of witnesses. *Quaale*, 182 Wn.2d at 200. A law enforcement officer's opinion testimony may be especially prejudicial because the "officer's testimony often carries a special aura of reliability." *Kirkman*, 159 Wn.2d at 928.

B.      *Issue Not Preserved for Appeal*

The State argues that Mattson-Graham failed to preserve the issue of Sergeant Patrick's alleged improper opinion testimony on appeal. We agree.

While Mattson-Graham objected to the officer's testimony as asked and answered and as calling for speculation, Mattson-Graham did not object on the basis that his testimony was improper opinion testimony. The basis for Mattson-Graham's objection below is different from the objection she now raises on appeal. The objections of "speculation" and "asked and answered" did not adequately notify the trial court of an improper opinion objection and, thus, deprived the trial court of the opportunity to rule on this issue. Because we will only consider the specific objection raised in the trial court, Mattson-Graham failed to preserve the issue for appeal. However, because an explicit or "nearly explicit" opinion on the defendant's guilt can

infringe on a defendant's constitutional rights, we must determine whether the alleged error is manifest constitutional error. *Kirkman*, 159 Wn.2d at 936; RAP 2.5(a)(3).

C.      *Sergeant's Testimony Not Manifest Constitutional Error*

"Admission of witness opinion testimony on an ultimate fact, without objection, is not automatically reviewable as a 'manifest' constitutional error." *Kirkman*, 159 Wn.2d at 936. To show an alleged error falls within the narrow exception of RAP 2.5(a)(3), an appellant must show that the asserted error is manifest. *City of Seattle v. Heatley*, 70 Wn. App. 573, 585, 854 P.2d 658 (1993). "'Essential to this determination is a plausible showing by the defendant that the asserted error had practical and identifiable consequences in the trial of the case.'" *Heatley*, 70 Wn. App. at 585 (quoting *State v. Lynn*, 67 Wn. App. 339, 345, 835 P.2d 251 (1992)). This requires an explicit or nearly explicit witness statement on an ultimate issue of fact. *Kirkman*, 159 Wn.2d at 936.

In *Heatley*, Division One of this court noted that an opinion that encompasses ultimate factual issues supporting a conclusion that the defendant is guilty does not necessarily make that testimony an improper opinion on guilt constituting a manifest constitutional error. *Heatley*, 70 Wn. App. at 579, 583. There, the court held admissible an officer's testimony that Heatley was intoxicated where that testimony was based on the officer's observations of Heatley's physical appearance, conduct, and field sobriety tests. *Heatley*, 70 Wn. App. at 576, 579.

Here, like the officer in *Heatley*, Sergeant Patrick testified about his own perceptions based on his observations of Mattson-Graham's behavior. Sergeant Patrick testified that he saw Mattson-Graham kick Detective Schlecht. Based on his observations, he testified that he believed the kick was intentional and it did not appear to be an accident. From these statements,

in their context it is clear that Sergeant Patrick was testifying about his own observations rather than about Mattson-Graham's guilt. He testified about the actions he saw, which enabled him to testify that Mattson-Graham appeared to deliberately kick.

Sergeant Patrick did not testify to the ultimate issue in the case, which was whether Mattson-Graham intended to make contact with Detective Schlecht with her kick.[1] Instead, he testified that Mattson-Graham's act of kicking was intentional. Sergeant Patrick expressed no opinion on Mattson-Graham's intent for the kick to make contact with Detective Schlecht. Because Sergeant Patrick did not provide any explicit or nearly explicit opinion testimony on the ultimate issue of Mattson-Graham's guilt, Mattson-Graham fails to show manifest error affecting a constitutional right. Thus, she has failed to preserve this issue for appeal, and we do not further consider it.

## II. DNA COLLECTION FEE

Mattson-Graham also argues that her DNA collection fee must be stricken because her DNA was collected before trial in this case as the result of two prior felony convictions in Oregon. However, RCW 43.43.7541 provides that a DNA collection fee is mandatory "unless *the state* has previously collected the offender's DNA as a result of a prior conviction." (Emphasis added). The term "the state" plainly refers to the State of Washington, not any state. Mattson-Graham's criminal history shows two prior felonies from Oregon. The record does not reflect that Mattson-Graham had a previous felony conviction in Washington, and therefore there

---

[1] The State was required to prove beyond a reasonable doubt that Mattson-Graham intentionally assaulted Detective Schlecht who was performing his official duties at the time of the assault. RCW 9A.36.031(1)(a), (g).

is no indication that the State previously had collected her DNA. Therefore, we affirm the imposition of the DNA collection fee.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

We concur:

Lee, C.J.

Glasgow, J.