# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57414-4-II |
| Respondent, | |
| v. | |
| JOSEPH DREW HUNTSMAN, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, J. — Joseph Huntsman was charged with third degree assault after a physical altercation with Deputy Cody Kirsch. Huntsman was visiting his friend, Shannon Denny, at the adult care home where she lived and worked as the resident care manager. Huntsman started acting in an aggressive and physical manner towards Denny, Denny's teenaged son, and Denny's friend, Katelyn Talley. Talley called the police and Deputies Kirsch and Cooney responded. When the deputies arrived, Huntsman became very agitated. Kirsch instructed Huntsman to leave the residence, and Huntsman responded that the deputies needed to leave. When the deputies refused, Huntsman advanced towards Kirsch and pushed Kirsch with his chest. At that point Deputies Kirsch and Cooney took Huntsman to the ground and a struggle ensued.

At Huntsman's trial, the court allowed Deputy Kirsch to offer opinion testimony regarding Huntsman's guilt that the State concedes was improper. Huntsman asks us to reverse his conviction, arguing that the error in admitting Kirsch's improper testimony was not harmless. The

State responds that reversal is not required because the untainted evidence in the case necessarily leads to a finding of guilt. We agree with the State and hold that although the trial court erred in permitting the improper testimony from Kirsch, the error was harmless beyond a reasonable doubt. We affirm Huntsman's conviction of third degree assault.

FACTS

I. UNDERLYING INCIDENT

Joseph Huntsman was charged with third degree assault after he advanced on, and pushed, a deputy sheriff during an altercation with law enforcement. The deputies were called to a residence that Huntsman was visiting because the resident of the home wanted him to leave. The incident occurred at Bernadette Jones Adult Family Home, a care home for developmentally disabled adults. Huntsman was visiting his friend, Shannon Denny, who worked as the resident care manager at the house. Denny lives in the downstairs level of the house, in an apartment with her two children. As the caregiver, Denny is permitted to have guests over to the apartment but her guests are not permitted to go upstairs where the residents live.

On the night of the incident both Huntsman and a woman named Katelyn Talley (another friend of Denny's), were visiting Denny and her two teenaged children in the downstairs apartment. Denny ordered pizza for the residents upstairs and when the delivery person arrived, he rang the doorbell to the main house. Huntsman, who had been drinking that day, heard the doorbell, became agitated, and ran upstairs into the residents' quarters. Huntsman came back to the downstairs apartment but began exhibiting concerning behavior. Denny's son and Talley tried to prevent Huntsman from going upstairs again, as it was against the rules, but Huntsman became physical and tried to push past Talley, Denny, and Denny's son. As Huntsman grew more agitated

and aggressive, Denny told him multiple times that he needed to leave the residence. At one point, Denny and Huntsman were arguing and Denny's son physically got between them and told Huntsman to leave Denny alone. Huntsman responded by pushing Denny's son into a fireplace in the bedroom where the three of them were standing. Talley eventually called the police because Huntsman would not calm down and she was concerned that Denny could lose her job.

Deputies Cody Kirsch and Michael Cooney responded to Talley's call, and contacted Huntsman in the garage of the residence. Deputy Kirsch approached Huntsman and asked him to leave. At the beginning of his interactions with the Deputies, Huntsman did not appear to be agitated. However, he soon became agitated and upset. As he spoke with the deputies, Huntsman grew increasingly emotional about the death of one of his friends who was killed in a police shooting. He raised his voice and began moving toward Kirsch. Kirsch placed his hand on Huntsman's chest, telling him to back up. Huntsman continued to push into Kirsch's hand and move towards him. According to Kirsch, at that point, Huntsman "struck [him] in the face." 2 Verbatim Rep. of Proc. (VRP) at 177. The deputies took Huntsman to the ground and a struggle ensued.

The State charged Huntsman with various charges, including third degree assault against Deputy Kirsch. The case proceeded to trial.

## II. TRIAL

At trial, the State presented testimony from Deputies Kirsch and Cooney, and from Denny and Talley. The court also admitted video captured by both deputies' body cameras, as well as photos depicting the deputies' injuries and damage to Deputy Kirsch's patrol car.

3

Deputy Kirsch testified that Huntsman became upset when the deputies told him that he needed to leave. Kirsch testified that Huntsman "began to yell and scream. He was fixated on some police shooting incident with someone he knew, [and] was approaching me in an aggressive manner." *Id.* at 174. In explaining the "aggressive manner," Kirsch said that Huntsman "started yelling at me, puffing out his chest, walking towards me as if—it was a manner consistent with challenging someone to a fight . . . [h]e kept advancing on me." *Id.* at 175. Kirsch then testified that Huntsman's motions were the type that "people make when they're working themselves up to want to physically fight with someone." *Id.* Kirsch testified that as the situation continued to escalate, the deputies tried to calm Huntsman down but they were unsuccessful. At this point in the interaction, Huntsman's hands were at his side, but Kirsch was "fearful that [Huntsman] would try to head butt [him]." *Id.* at 209-10. Kirsch said, "[Huntsman] pushed into me. And then he struck me in the face. And then the fight was on." *Id.* at 177. Ultimately, Kirsch applied his taser on Huntsman in an effort to subdue him. During his struggle with Huntsman, Kirsch explained, his glasses were knocked off. He said that "as soon as Mr. Huntsman stepped into me, I don't know how he struck me in the face, but I got struck inside of the face, and that's when my glasses left my face." *Id.* at 186-87.

Deputy Cooney testified that "there was an aggressive movement by [Huntsman] prior to us having contact with him where he was getting into the face with Deputy Kirsch." *Id.* at 231. After that, Deputy Cooney explained, "I recalled [Huntsman] once again with the aggressive posture going into the body of [Deputy Kirsch]." *Id.* at 231-32.

Denny testified that Huntsman resisted the deputies, and testified to her observations of the struggle between Huntsman and the deputies on the ground. Talley also testified, and when asked

4

if she saw "Mr. Huntsman punch any of the officers," Talley testified, "I saw him shove an officer, and that was at, . . . the very beginning." *Id.* at 161.

On cross examination of Deputy Kirsch, defense counsel asked Kirsch to describe a segment of the video from his body camera footage. The question was open ended and invited Kirsch to narrate what he saw in the video. The following exchange took place:

Q.   I'm going to play from 1:52.
(Video played . . .)

Q.   (By [Defense counsel]) So can you tell us again what happened in this portion of the video?

A.   [Kirsch:] So at that portion he pushes into me. At that point with my hand already on him it's unwanted contact. It turns into an assault at that point with me being a commissioned law enforcement officer and—

[Defense counsel]: Objection. He's rendering an opinion on the—

THE COURT: Well, he can testify as to his understanding.

A.   [Kirsch:] So at that point I deemed it to be an assault. I did not want him to touch me that way. And I'm a law enforcement officer in the performance of my duties, which makes it an Assault 3 which is a felony.

[Defense counsel]: Objection, Your Honor.

THE COURT: Again, the jury will be instructed on what the law is.

A.   [Kirsch:] So at that point I deemed that there was probable cause to arrest him for Assault 3. And so he continued to push against me. Deputy Cooney moved in to try to help me detain him.

*Id.* at 208-09.

Huntsman was convicted of third degree assault against Deputy Kirsch.[1] Huntsman appeals.

ANALYSIS

Huntsman argues that the portion of Kirsch's testimony when he said that he deemed Huntsman's action to be an assault on a law enforcement officer constituted improper opinion testimony which invaded the province of the jury, and that the trial court's error in allowing this testimony was not harmless. The State concedes that this portion of Kirsch's testimony was improper, but argues that the error in admitting it was harmless beyond a reasonable doubt.

I. IMPROPER TESTIMONY

A. Legal Principles

In general, no witness may testify to their opinion regarding a defendant's guilt. *City of Seattle v. Heatley*, 70 Wn. App. 573, 577, 854 P.2d 658 (1993). Doing so prejudices the defendant in that it carries potential to unduly influence the impartiality of the jury, thereby interfering with the defendant's constitutional right to an impartial jury. *Id.* To determine whether a statement constitutes an impermissible opinion of the defendant's guilt or innocence, courts will generally consider the following factors: "the type of witness involved, the specific nature of the testimony, the nature of the charges, the type of defense, and the other evidence before the trier of fact." *Id.*

B. Application

Huntsman argues that the trial court erred in allowing Deputy Kirsch to give improper opinion testimony regarding Huntsman's guilt. Huntsman takes issue with Kirsch's remarks that

---

[1] Huntsman was also convicted of fourth degree assault for assaulting Denny's twelve-year-old son, and third degree malicious mischief for damaging a patrol car after his arrest. Huntsman does not challenge these convictions on appeal.

Huntsman's actions amounted to assault in the third degree. The State concedes that these remarks are improper.

It is important to note the unique role of Deputy Kirsch in this case. As the responding officer, Kirsch was not just the person tasked with investigating what had occurred at the house and making the initial determination of whether there was probable cause to arrest Huntsman, he was also the alleged victim of the assault. With respect to Huntsman's complaint that Kirsch testified that the physical contact from Huntsman was unwanted and offensive to him, this is an element of the crime. If this case involved an allegation of assault against a lay person, that person would be permitted to testify that the alleged touching was unwanted. That the alleged victim of the unwanted touching in this case was a law enforcement officer does not change that.

With regard to Kirsch's testimony to the effect that the alleged touching in this case met the legal definition of third degree assault, however, this testimony is improper and the State's concession on this point is well taken. The only question that remains for us to resolve is whether the trial court's error in admitting this testimony is harmless beyond a reasonable doubt.

II. HARMLESS ERROR

A. Legal Principles

*1. Definition of Assault*

RCW 9A.36.031 governs assault in the third degree. The relevant portions of the statute state that "[a] person is guilty of assault in the third degree if he or she, under circumstances not amounting to assault in the first or second degree . . . [a]ssaults a law enforcement officer or other employee of a law enforcement agency who was performing his or her official duties at the time of the assault." RCW 9A.36.031(1)(g).

7

Because the statute does not provide a definition of assault, we turn to the common law for definitions. *State v. Byrd*, 125 Wn.2d 707, 712, 887 P.2d 396 (1995). A person commits an assault by (1) attempting, with unlawful force, to inflict bodily injury upon another; (2) intentionally touching or striking another in a manner that is harmful or offensive (actual battery); or (3) doing an act with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury. *State v. Stevens*, 158 Wn.2d 304, 311, 143 P.3d 817 (2006); *In re the Pers. Restraint of Arntsen*, 25 Wn. App. 2d 102, 111, 522 P.3d 135 (2023).

### 2. *Overwhelming Untainted Evidence*

In determining whether a constitutional error warrants a new trial, we ask whether the error was harmless beyond a reasonable doubt. *State v. Guloy*, 104 Wn.2d 412, 425-426, 705 P.2d 1182 (1985). "A constitutional error is harmless if the appellate court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of the error." *Id.* at 425. Our supreme court held in *Guloy* that appellate courts should apply the " 'overwhelming untainted evidence' " standard, and look "only at the untainted evidence to determine if the untainted evidence is so overwhelming that it necessarily leads to a finding of guilt." *Id.* at 426.

B. Application

The untainted evidence in this case necessarily leads to a finding of guilt. To prove third degree assault, the State needed to prove that Huntsman assaulted Deputy Kirsch and that Kirsch was a law enforcement officer in the performance of his official duties at the time of the assault. Here, the testimony from Talley, Deputy Cooney, and the remaining untainted testimony from

Deputy Kirsch established that Huntsman advanced on Deputy Kirsch in a way that, coupled with Huntsman's high level of agitation, caused Kirsch to fear that he would be headbutted or assaulted. This is depicted in the body camera footage as well. The untainted testimony from each of these witnesses also established that Huntsman, using his chest, pushed or shoved Kirsch. This, again, is corroborated by the body camera footage. An assault can be a very fleeting act, and even a de minimis touching can amount to an assault when the touching is both unwanted and offensive.[2] Moreover, as we note above, actual battery is not required to establish an assault. It is enough if the victim was placed in reasonable apprehension of harm by the defendant's actions.

Talley testified that Huntsman "shoved" Deputy Kirsch. 2 VRP at 161. Deputy Cooney testified that Huntsman made "an aggressive movement" towards Kirsch and got into Kirsch's face, and had an "aggressive posture going into the body of [Kirsch]." *Id.* at 231-32. And Deputy Kirsch, in the untainted portion of his testimony, testified that Huntsman pushed him, advanced on him, and struck him in the face. Kirsch also testified that he feared Huntsman was preparing to headbutt him.

Any reasonable jury would have found that Huntsman committed an unlawful touching or striking by intentionally pushing into Deputy Kirsch's chest or, at the very least, that Huntsman assaulted Deputy Kirsch by placing him in reasonable apprehension of harm. *Stevens*, 158 Wn.2d at 311; *State v. Frazier*, 81 Wn.2d 628, 631, 503 P.2d 1073 (1972).

---

[2] The jury was instructed that a "touching or striking is offensive if the touching or striking would offend an ordinary person who is not unduly sensitive." Clerk's Papers at 29.

No. 57414-4-II

The overwhelming untainted evidence necessarily leads to a finding of guilt of third degree assault. Accordingly, we hold that the error is harmless beyond a reasonable doubt and affirm Huntsman's conviction of assault in the third degree.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

MAXA, J.

GLASGOW, J.