[No. 31381-9-I.    Division One.    May 15, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. VICENTE CRUZ, *Appellant*.

*Kathryn Miller* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Brenda Pahmeier, Deputy,* for respondent.

GROSSE, J. — Vicente Cruz appeals his conviction of one count of delivery of heroin. On appeal, he claims the trial court erred by (1) permitting a detective, who was not involved in Cruz's case, to testify about heroin users, heroin transactions, and the Seattle heroin market; and (2) admitting evidence of the drug paraphernalia found in the middle man's apartment and evidence of prior controlled buys between the informant and the middle man in which Cruz was not involved. In a pro se brief, he contends his counsel's lack of preparation and her failure to investigate and establish a defense deprived him of effective assistance of counsel. We affirm.

This case arose from a controlled buy involving Michael Hewson, a police informant; Gary Fay, the "middle man"; and Cruz, the seller. This buy was one of several controlled buys set up by Detective Roger Kellams of the Kent Police Department involving Hewson and Fay, and began with Hewson arranging with Fay to buy 4 grams of heroin. Hewson went to Fay's apartment and gave him $800 of the $2,000 of marked police buy money he was carrying. Fay paged a supplier and arranged for the delivery of 4 grams of heroin across the street from his apartment, at the Washington State Convention Center. Police surveillance officers

observed Fay and Hewson leave Fay's apartment and meet Cruz in the tunnel that runs under the convention center. Fay handed the $800 of buy money to Cruz. Cruz and Hewson continued through the tunnel and stopped near some plants. Cruz reached into the plants, pulled out a brown bag, and handed it to Fay. Cruz left in one direction, and Hewson and Fay in another. Fay handed Hewson the bag and Hewson signaled to the surveillance officers that the deal had been completed.

Both Fay and Cruz were arrested. Police searched Cruz and found $720 of buy money in his pocket and $60 of unmarked money in another pocket. Eighty dollars of buy money was found in a bag in Fay's possession. The brown bag Cruz retrieved out of the plants contained a substance later determined to be heroin.

Cruz was tried twice. His first trial ended in a mistrial when the jury was unable to return a unanimous verdict. At a second trial, Cruz was found guilty of one count of delivery of heroin and sentenced to 47 months. His defense was that his meeting with Fay near the convention center was a chance encounter and that the exchange of money was Fay's repayment of money Cruz had loaned to him.

### EVIDENCE OF "TYPICAL" HEROIN TRANSACTIONS AND HEROIN USERS

The trial court permitted the State to call Detective Glenn Edmondson of the King County Police Department Drug Enforcement Unit to testify about "typical" heroin transactions. Detective Edmondson was neither involved in the controlled buy at issue here, nor was he familiar with Fay or Cruz. At the time he testified, Detective Edmondson had been a member of the drug enforcement unit for 10 years and had been involved in 500 to 600 undercover investigations, the majority of which involved heroin. His testimony consisted of responses to the following questions: (1) What does heroin look like? (2) How much is typically involved in a transaction? (3) How and with what implements is heroin ingested? (4) Is heroin a social drug? (5) Do police officers in a heroin investigation usually work undercover alone? (6)

Why are informants used in heroin investigations? (7) What is a controlled buy? (8) Where do heroin transactions commonly take place? (9) Why do they usually take place in public areas? (10) Why is it common for a heroin supplier to hide the drugs outside? (11) How does a typical heroin transaction proceed after the parties agree to meet? (12) Did the detective gain his knowledge of heroin transactions from personal experience?[1]

Cruz contends the trial court erred by admitting this testimony because, when coupled with the prosecutor's closing argument in which he argued that Cruz's actions fit within the detective's description of a typical heroin transaction, the testimony constituted an improper opinion about Cruz's guilt. We disagree.

Opinion testimony is not objectionable merely because it embraces an ultimate issue to be decided by the trier of fact. ER 704. However, "[n]o witness, lay or expert, may testify to his opinion as to the guilt of a defendant, whether by direct statement or inference." *State v. Black*, 109 Wn.2d 336, 348, 745 P.2d 12 (1987). While *Black* does condemn testimony expressing an opinion of guilt even by inference, subsequent cases, reviewed in *Seattle v. Heatley*, 70 Wn. App. 573, 854 P.2d 658 (1993), *review denied*, 123 Wn.2d 1011 (1994), have attempted to delimit this rather broad principle by balancing it against the permissive scope of ER 702.[2]

■■ "[T]estimony that is not a direct comment on the defendant's guilt or on the veracity of a witness, is otherwise helpful to the jury, and is based on inferences from the evidence is not improper opinion testimony." *Seattle v. Heatley*, 70 Wn. App. at 578. The determination of whether testi-

---

[1]After hearing arguments from both sides before the detective testified, the trial court carefully delineated those matters about which the detective could testify. There is no dispute that the detective's testimony encompassed only those matters deemed proper matters of inquiry under the trial court's ruling.

[2]ER 702 states:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

mony constitutes an impermissible opinion as to the defendant's guilt depends on the particular circumstances of each case. *Seattle v. Heatley*, 70 Wn. App. at 579.

> The trial court must be accorded broad discretion to determine the admissibility of ultimate issue testimony, [*State v.] Jones*, 59 Wn. App. [744, 751, 801 P.2d 263 (1990), *review denied*, 116 Wn.2d 1021 (1991)] and this court has expressly declined to take an expansive view of claims that testimony constitutes an opinion on guilt.

*Seattle v. Heatley*, 70 Wn. App. at 579.

The evil sought to be avoided by prohibiting a witness from expressing an opinion as to the defendant's guilt or innocence is having that witness tell the jury what result to reach. 5A Karl B. Tegland, Wash. Prac., *Evidence* § 309, at 470 (3d ed. 1989).

■ Obviously, a witness's statement that a particular defendant is guilty goes beyond the pale. In addition, inferential testimony that leaves no other conclusion but that a defendant is guilty cannot be condoned, no matter how artfully worded.

In the present case, the detective's testimony did not amount to a directive telling the jury what result to reach on the issue of Cruz's guilt or innocence. The detective did not render an opinion or otherwise make an assertion that directly implicated Cruz. Rather, the testimony consisted solely of the detective's knowledge of typical heroin transactions and typical heroin users gained from his involvement in 500 to 600 undercover investigations involving that drug. Even after the detective testified, the jury still had to decide (1) whether to believe the detective, and (2) the ultimate issue of whether the other evidence presented demonstrated Cruz's guilt of the crime charged. As such, the testimony was not an impermissible expression of the detective's opinion as to Cruz's guilt.[3]

---

[3]Nor was the testimony improper when coupled with the prosecutor's statements during closing argument that the evidence fit within the detective's description of a typical heroin transaction. Those statements were within the wide latitude given a prosecutor during closing argument to draw and express

The detective's testimony in the present case can be distinguished from the testimony of a rape counselor held inadmissible in *State v. Black, supra*. The counselor testified that in her opinion the victim suffered from rape trauma syndrome, that there was a specific profile for rape victims, and that the victim fit within that profile. The court found that this testimony amounted to an opinion that the defendant was guilty of rape. Unlike the detective's testimony in the present case, the counselor's testimony in *Black* directly implicated the defendant in the rape by identifying the victim as falling within the profile of a rape victim.

Similarly, in *State v. Florczak*, 76 Wn. App. 55, 882 P.2d 199 (1994), we held that a social worker's testimony that her diagnosis of posttraumatic stress syndrome was secondary to sexual abuse was erroneously admitted because it amounted to an opinion of the defendants' guilt in their trial on charges of sexual exploitation of a minor and first degree child molestation. Only the defendants had been implicated as possible abusers.

In *Black* and *Florczak*, the testimony at issue set up a construct that allowed the jury only one inference, however fallacious. By contrast, the detective's testimony in the present case left for the jury the determination of whether the detective was credible and, more importantly, whether Cruz was guilty as charged. For the foregoing reasons, we find that the trial court did not err by permitting Detective Edmondson to testify as set forth above.

The trial court is affirmed.

A majority of the panel having determined that only the foregoing portion of this opinion will be published in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

AGID, J., concurs.

---

reasonable inferences from the evidence. *See State v. Hoffman*, 116 Wn.2d 51, 94-95, 804 P.2d 577 (1991); *State v. Jones*, 71 Wn. App. 798, 808, 863 P.2d 85 (1993), *review denied*, 124 Wn.2d 1018 (1994).

BAKER C.J. (concurring) — I concur because the challenged testimony concerning typical drug transactions related to a subject beyond the experience of the average juror.

The danger of such testimony is that it can convert innocuous conduct or status into criminal conduct via profile testimony. *See, e.g., United States v. Cruz*, 981 F.2d 659 (2d Cir. 1992). As in *Cruz*, some courts have prohibited the use of such testimony unless it is offered in rebuttal to a defense which in some manner claims that the defendant does not fit the stereotype of a drug dealer. *See also United States v. Lim*, 984 F.2d 331 (9th Cir.), *cert. denied*, 113 S. Ct. 2944 (1993).

The Defendant here relies heavily on these cases in support of his characterization of the challenged testimony as profile evidence, and points out that his defense did not "open the door" to the testimony because it was presented as part of the State's case in chief. Nevertheless, such testimony may properly be admitted when the trial court determines that the subject matter will be of assistance to the jury, which might not otherwise readily grasp the significance of the facts. Because the potential prejudice can be significant, however, trial courts should exercise care (as did the court in this trial) to avoid allowing such testimony to improperly vouch for the credibility of the State's fact-witness by mirroring his version of events, cloaked in an expert witness' description of patterns of criminal conduct.