# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73914-0-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID DARRELL SYKES, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: November 21, 2016 |
| | ) | |

VERELLEN, C.J. — David Sykes appeals his conviction for third degree assault of a police officer. He contends his trial counsel was ineffective for failing to propose a "modified 'no duty to retreat'" jury instruction.[1] But even if the instruction is appropriate in an assault, the evidence here did not support giving such an instruction. Sykes also contends the officer's testimony that his interaction with Sykes "made it through the force review board without a single critique"[2] was an impermissible opinion on his guilt. Alternatively, he argues his counsel was ineffective for failing to object to the opinion testimony. But Sykes fails to establish actual prejudice from the isolated and unsolicited statement. We affirm.

---

[1] Appellant's Br. at 1.

[2] Report of Proceedings (RP) (Aug. 4, 2015) at 226.

## FACTS

On his way to work in downtown Seattle the morning of January 24, 2015, Jarrid McAuliff walked passed David Sykes, a stranger to McAuliff. When McAuliff ignored some comments by Sykes, Sykes walked up to McAuliff, leaned in, and told him, "You better watch yourself, boy."[3] Then Sykes immediately punched McAuliff in the face. McAuliff started bleeding and threw his hot coffee on Sykes.[4] McAuliff retreated across the street and called 911.

Officer Brian Patenaude, his partner, and another officer responded to McAuliff's call. Officer Patenaude recognized Sykes from a prior incident at the same location. Sykes matched McAuliff's description of his assailant and was shouting and pacing with clenched fists. Officer Patenaude wanted to wait for more officers to arrive before approaching Sykes, but intervened when Sykes started heading back towards McAuliff.

Officer Patenaude told Sykes to stop walking, but Sykes continued toward McAuliff. Officer Patenaude grabbed Sykes's arm, put him into an "escort hold" and directed Sykes away from McAuliff.[5] Sykes told Officer Patenaude to get out of his way and that he was "going to beat his mother-fucking ass," referring to McAuliff.[6] Sykes yanked his arm free from Officer Patenaude's hold and shouted, "Don't push me."[7]

---

[3] RP (Aug. 5, 2015) at 312.

[4] Sykes had a different chronology of the events, and told police that he punched McAuliff because McAuliff threw hot coffee on him.

[5] RP (Aug. 4, 2015) at 163. According to Officer Patenaude, an "escort hold" entails holding "somebody's arm just above the elbow and at the wrist. And you are literally just escorting them. You're not squeezing. You are not pulling. You are just trying to escort them along." Id.

[6] Id. at 164.

[7] Id. at 164, 166. Officer Patenaude denied pushing Sykes and assumed Sykes was referring to Officer Patenaude's escort hold on Sykes.

2

Officer Patenaude repeatedly told Sykes to "walk."[8] Instead of obeying Officer Patenaude's commands, Sykes turned, faced Officer Patenaude, and punched him in the face.

Officer Patenaude returned Sykes's punch and the two began fighting. Sykes eventually fell to the ground, but he pulled Officer Patenaude down with him. He landed on top of Officer Patenaude and continued to punch him. Officer Patenaude's partner and the other officer attempted to strike Sykes with their batons, but the blows appeared to have little effect. Finally, two additional officers arrived and arrested Sykes. Most of the incident was captured on police dashcam video recordings and a nearby convenience store's surveillance cameras. Officer Patenaude suffered a black eye as well as elbow and knuckle abrasions.

The State charged Sykes with one count of third degree assault for assaulting a police officer and one count of third degree assault for negligently causing bodily harm and substantial pain to McAuliff. [9]

A jury found Sykes guilty as to the charge of third degree assault of Officer Patenaude, but could not reach a verdict as to the charge involving McAuliff.[10] At sentencing, the State dismissed the charge involving McAuliff, and the court imposed an exceptional sentence downward of 16 months.

Sykes appeals.

---

[8] Id. at 166.

[9] RCW 9A.36.031(1)(f), (g).

[10] The jury also could not reach a verdict as to the lesser degree offense of fourth degree assault of McAuliff.

3

<u>ANALYSIS</u>

Sykes contends his counsel was ineffective for "failing to propose a modified 'no duty to retreat'" jury instruction as to the charge involving Officer Patenaude.[11] We disagree.

To establish ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and the performance prejudiced the defendant's case.[12] Deficient performance is shown if counsel's conduct fell below an objective standard of reasonableness.[13] To satisfy the prejudice prong, a defendant must show a "reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different."[14] "Where the claim of ineffective assistance is based upon counsel's failure to request a particular jury instruction, the defendant must show he was entitled to the instruction, counsel's performance was deficient in failing to request it, and the failure to request the instruction caused prejudice."[15] There is a strong presumption that counsel provided effective assistance.[16]

Sykes's counsel proposed an instruction based on the no duty to retreat Washington pattern jury instruction as to the charge involving Officer Patenaude:

---

[11] Appellant's Br. at 1.

[12] <u>Strickland v. Washington</u>, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[13] <u>State v. Stenson</u>, 132 Wn.2d 668, 705-06, 940 P.2d 1239 (1997).

[14] <u>State v. McFarland</u>, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

[15] <u>State v. Thompson</u>, 169 Wn. App. 436, 495, 290 P.3d 996 (2012).

[16] <u>State v. Tilton</u>, 149 Wn.2d 775, 784, 72 P.3d 735 (2003).

It is lawful for a person who is in a place where that person has a right to be and *who has reasonable grounds for believing that he or she is being attacked* to stand his/her ground and defend against such attack by the use of lawful force. The law does not impose a duty to retreat.[17]

Sykes correctly concedes that this instruction reflects an incorrect statement of the law as to a police officer-related attack.[18] A "person may use force to resist arrest only if the arrestee *actually*, as opposed to *apparently*, faces imminent danger of serious injury or death."[19] Sykes argues his counsel could easily have modified the proposed instruction to "It is lawful for a person who is in a place where that person has a right to be and *who is actually about to be seriously injured* to defend against such attack by the use of lawful force. The law does not impose a duty to retreat."[20]

Sykes cites no authority that the no duty to retreat standard applies to an assault of a police officer.[21] But even assuming it does apply, the evidence did not support such an instruction. A party is not entitled to an instruction if no evidence supports it.[22]

Here, most of the incident involving Officer Patenaude was captured on police dashcam video recordings and nearby surveillance cameras. These admitted recordings show uniformed Officer Patenaude attempting to lawfully detain Sykes after

---

[17] Clerk's Papers (CP) at 46.

[18] See Appellant's Br. at 10 ("[T]he italicized language represents an incorrect statement of the law as to the charge involving [Officer] Patenaude.").

[19] State v. Bradley, 141 Wn.2d 731, 737, 10 P.3d 358 (2000).

[20] Appellant's Br. at 11.

[21] He relies on readily distinguishable cases where a no duty to retreat instruction was found appropriate for assaults between civilians. See State v. Allery, 101 Wn.2d 591, 598, 682 P.2d 312 (1984); State v. Williams, 81 Wn. App. 738, 742, 916 P.2d 445 (1996).

[22] Allery, 101 Wn.2d at 598.

a report of an assault. Officer Patenaude testified that he arrived on scene and saw Sykes yelling and pacing with clenched fists, wearing clothes that matched the suspect's description. The video recordings confirm that Officer Patenaude did not intervene until Sykes, undeterred by Officer Patenaude's commands to stop, continued towards McAuliff. Officer Patenaude positioned himself between Sykes and McAuliff and attempted to escort Sykes away from McAuliff, but Sykes broke free of Officer Patenaude's hold. In one of the videos, Officer Patenaude is then heard directing Sykes to walk four times immediately before being punched. None of the video recordings show Officer Patenaude, or any other officer, drawing a weapon or using physical force other than the escort hold before being punched.

There is no evidence that Sykes was "actually about to be seriously injured" by Officer Patenaude. And Sykes did not have a "right to be" in that location ignoring the officer's order to walk away. Because the evidence did not support the instruction, Sykes's ineffective assistance claim fails.

For the first time on appeal, Sykes contends Officer Patenaude testified to an improper opinion on Sykes's guilt. But he fails to establish any prejudice.

Opinions on guilt are generally improper whether made directly or by inference.[23] "Impermissible opinion testimony regarding the defendant's guilt may be reversible error because such evidence violates the defendant's constitutional right to a jury trial, which

---

[23] State v. Quaale, 182 Wn.2d 191, 199, 340 P.3d 213 (2014).

includes the independent determination of the facts by the jury."[24] Whether testimony is an impermissible opinion about guilt depends upon the circumstances.[25]

In determining whether statements are impermissible opinion testimony, the trial court will consider the circumstances of the case, including "'(1) the type of witness involved, (2) the specific nature of the testimony, (3) the nature of the charges, (4) the type of defense, and (5) the other evidence before the trier of fact.'"[26] "The point is to avoid having witnesses tell the jury what result to reach."[27]

Officer Patenaude's unsolicited statement occurred when the prosecutor asked what would have happened had Sykes stopped resisting:

OFFICER: The batons would have stopped.

PROSECUTOR: Okay. And why is that?

OFFICER: Because we're trained to strike and assess. . . . [L]et's say somebody is on their hands and knees and they are still trying to rear up on you, you know. You strike and assess. Are they still fighting? Are they still aggressing?

And we have, you know, every one of our videos and all of our use of forces are put under extremity [sic] scrutiny through what we call a force review board. And they review each strike, each command given, et cetera, et cetera. *This one's made it through the force review board without a single critique.*[28]

---

[24] Id.

[25] State v. Cruz, 77 Wn. App. 811, 814-15, 894 P.2d 573 (1995); City of Seattle v. Heatley, 70 Wn. App. 573, 579, 854 P.2d 658 (1993).

[26] State v. Montgomery, 163 Wn.2d 577, 591, 183 P.3d 267 (2008) (internal quotation marks omitted) (quoting State v. Demery, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001)).

[27] State v. King, 135 Wn. App. 662, 673, 145 P.3d 1224 (2006).

[28] RP (Aug. 4, 2015) at 225-26 (emphasis added).

Sykes's attorney objected to the testimony as irrelevant, but did not mention anything about an improper opinion.[29] Sykes is precluded from arguing an improper opinion on guilt for the first time on appeal unless he can demonstrate a manifest error affecting a constitutional right.[30]

"Admission of witness opinion testimony on an ultimate fact, without objection, is not automatically reviewable as a 'manifest' constitutional error."[31] A constitutional error is manifest only when the error caused actual prejudice or practical and identifiable consequences.[32]

Officer Patenaude's unsolicited comment was fleeting and never mentioned again. It was not a direct comment on Sykes's guilt. The comment did not reference Sykes by name, discuss Sykes's actions, or opine on whether Sykes's use of force was justified. Rather, the comment opined on *Officer Patenaude's* use of force. Sykes theorizes the jury "likely" attributed "authority and expertise" to the force review board, "[a]nd if Patenaude's actions were appropriate, then Sykes's response was necessarily invalid."[33] But nothing in the record supports his theory. The jury was instructed that *Sykes's* use of force was lawful only if he was "actually about to be seriously injured."[34]

---

[29] Id. ("I'm going to object to that, Your Honor. It's not relevant.").

[30] RAP 2.5(a)(3).

[31] State v. Kirkman, 159 Wn.2d 918, 936, 155 P.3d 125 (2007).

[32] Id. at 935.

[33] Appellant's Br. at 17.

[34] CP at 70. The jury was not instructed on the "Lawful Force—Resisting Detention" instruction, which states that a person's use of force against a police officer is lawful "only if the person being arrested is in actual and imminent danger of serious injury *from an officer's use of excessive force*." 11 WASHINGTON PRACTICE WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 17.02.01, at 257 (3rd ed. 2008) (emphasis added).

The jury was not directed to determine or consider whether Officer Patenaude's use of force was justified.

Especially because the unsolicited comment was brief and isolated, Sykes does not show a reasonable probability that the outcome would be any different. Because Sykes fails to show actual prejudice, we conclude that Officer Patenaude's comment about the force review board is not a manifest constitutional error.

Alternatively, Sykes claims his counsel was ineffective for failing to object to the opinion testimony. But a defendant claiming ineffective assistance must demonstrate both deficient performance *and prejudice*, i.e., a reasonable probability that the outcome would have been different but for counsel's omission.[35] As discussed, there is no reasonable probability that the outcome would have been different had Sykes's counsel objected to the challenged testimony as improper.

Therefore, we affirm.[36]

WE CONCUR:

Trickey, J

Becker, J.

---

[35] McFarland, 127 Wn.2d at 334-35.

[36] In response to Sykes's challenge to any award of costs on appeal, the State indicates it does not seek to recover costs on appeal. See Respondent's Br. at 30.