IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 78802-7-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| ROBERT ANDERSON, | ) | |
| | ) | FILED: March 9, 2020 |
| Appellant. | ) | |

VERELLEN, J. — Robert Anderson appeals his convictions for possession of methamphetamine with intent to deliver and bail jumping. He asserts that reversal is required because the trial court admitted improper police opinion testimony and because the prosecutor vouched for the officers' credibility during closing arguments. We conclude that the officers' testimony did not invade the province of the jury. Even if the prosecutor improperly vouched for the credibility of the police witnesses, there is no reasonable probability that the error affected the outcome of the trial. Anderson also fails to establish he is entitled to a new trial based on cumulative error. Therefore, we affirm.

FACTS

On the evening of January 21, 2016, Sergeant Jay Taylor and Sergeant Jeff Hendrickson of the Everett Police Department contacted Robert Anderson on

Smith Avenue in Everett, near the Men's Gospel Mission. The officers stopped Anderson on a search warrant,[1] placed him in handcuffs to execute the search, and read him his Miranda[2] warnings. During the search, officers located a plastic soap box in a small zipper pocket in the left leg of Anderson's pants. Inside the soap box, officers discovered several loose cigarettes and 14 small plastic bags containing a crystalline substance that was later identified as methamphetamine. The officers also recovered a cell phone from Anderson's jacket pocket. The phone contained multiple text messages discussing the sale and purchase of controlled substances.

Sergeant Taylor arrested Anderson and transported him to the Snohomish County Jail. Sergeant Taylor testified that when they arrived at the jail, Anderson spontaneously admitted that he was selling drugs to make a little money before going to a commercial trucking school.

On October 11, 2017, the State charged Anderson with one count of possession of a controlled substance (methamphetamine) with intent to manufacture or deliver. After Anderson failed to appear for his omnibus hearing, the State filed an amended information adding one count of bail jumping.

Because the State anticipated Anderson would argue the drugs were for personal use and not delivery, it moved to allow police officers to testify in their expert capacity based on their training and experience regarding the

---

[1] Reference to the search warrant was suppressed at trial.

[2] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 10 Ohio Misc. 9 (1966).

characteristics and behaviors of typical drug dealers and drug users. The defense sought to restrict officers from opining that Anderson was a drug dealer predicated on the number of calls on his phone, the high drug crime rate in the area, Anderson's lack of paraphernalia or other signs of being a non-user, or that the amount of methamphetamine seized in the baggies found on Anderson was consistent with amounts used by people on the streets in the area. The court ruled that the police officers could indicate whether they believed Anderson was under the influence, but it disallowed "general testimony as to whether someone does or does not look like a meth user."[3] The court reserved ruling on other individual issues pending testimony, but cautioned that "the focus of the State's case needs to be on the defendant's conduct and the evidence that they obtained . . . and not too much generalizing because that can certainly be objectionable."[4]

At trial, the State asked Officer Taylor about his "training [and] experience as far as recognizing indicators that would indicate a drug user."[5] Defense counsel objected that such testimony was barred by the court's pretrial rulings, but the court disagreed and allowed Officer Taylor to answer. The State then elicited the following testimony:

> Q:    What are some of the indicators that you've been trained and in your career, over the course of your career, that would indicate a drug user?

---

[3] Report of Proceedings (RP) (July 23, 2018) at 18.

[4] Id. at 20.

[5] Id. at 113.

A: A drug user in—so common to the drug users that I have run into during my employment at Everett, they will have typically some kind of drug paraphernalia on them for the use of whatever substance it is. . . . [T]hey may have a quantity of that substance on them. Typically, a fairly small or not a high dollar amount because a user is typically using the substance and not hoarding it or storing it for any reason, so they'll go through it. So those would be the two . . . main things, I'd say.

Q: O.K. And have you been trained in differentiating between a drug user versus a drug dealer?

A: Yes. . . .

Q: O.K. And what is that training [and] experience?

A: . . . . So it's kind of the training part of it, and then seeing in real life the difference, you typically are going to see a larger quantity of a substance. It's going to be packaged differently as opposed to a user. If they buy a package, it will be one package; whereas a dealer typically will—[6]

Defense counsel again objected on the ground that Officer Taylor's testimony was "going towards the issue that the jury has to find."[7] The court sustained the objection/

The State then asked Officer Taylor, "And in the course of your career, are there certain indicators . . . which would indicate to you the difference in a drug user and drug dealer?[8] Defense counsel again objected. This time, the court

---

[6] Id. at 113-15.

[7] Id. at 115.

[8] Id. at 115-16.

4

ruled, "In terms of in a general sense, I'll allow some limited testimony, but I don't want to go too far down this road, counsel."[9]

The State next asked Officer Taylor, "What are some of the signs that you would look for?," and Officer Taylor responded, "Quantity, method of packaging, amount of money, measuring equipment, communication equipment for setting up deals."[10]

The State later asked Sergeant Taylor how often individuals use their true name in setting up a drug transaction. The court sustained defense counsel's objection:

> Well, I mean, he certainly testified and I did allow it in terms of some signs with respect to amount and packaging and that sort of thing, and I do think that's probably maybe beyond the province of what somebody might know or not know. But in terms of . . . whether someone's using the correct name and that that means it's a drug dealer as opposed to a drug user, that sort of thing, I'm not convinced that that's relevant testimony.[11]

The following day, the State called Officer Oleg Kravchun to testify as an expert on drug transactions based on his training and experience. Defense counsel argued that such testimony was unnecessary because the jury could evaluate the factual evidence in the case based on its ordinary experience and knowledge. The court ruled that Officer Kravchun could educate the jury regarding

---

[9] Id. at 116.

[10] Id.

[11] Id. at 145.

"what is typically involved in a drug transaction"[12] but cautioned that the officer could not be asked to opine whether the facts of this case fit that profile. Officer Kravchun then testified regarding how drugs are typically packaged in a drug transaction, the range of amounts sold, how methamphetamine is typically ingested, and how drug transactions are set up.

Anderson testified at trial. He denied telling Officer Taylor that he was selling drugs to make money. Rather, he said that he was living at the Everett men's shelter and trying to earn money working as an unloader at Atlas Van Lines while he renewed his truck driver's license. He testified that the pants he was wearing on the evening he was arrested were borrowed from another man at the shelter. As for the text messages showing drug dealing conversations on his phone, he explained that he often allowed other people to borrow it.

The jury convicted Anderson as charged. Anderson appealed.

ANALYSIS

Police Officers' Testimony

Anderson contends that reversal is required because the trial court allowed Sergeant Taylor and Officer Kravchun to offer improper opinions on guilt that infringed on his constitutional right to an impartial jury. We disagree.

Trial courts "must be accorded broad discretion to determine the admissibility of ultimate issue testimony."[13] ER 704 provides that "[t]estimony in

---

[12] Id. at 188.

[13] City of Seattle v. Heatley, 70 Wn. App. 573, 579, 854 P.2d 658 (1993).

the form of an opinion or inferences otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." "'[T]estimony that is not a direct comment on the defendant's guilt or on the veracity of a witness, is otherwise helpful to the jury, and is based on inferences from the evidence is not improper opinion testimony.'"[14] However, "[n]o witness, lay or expert, may testify to his opinion as to the guilt of the defendant, whether by direct statement or inference."[15] "In addition, inferential testimony that leaves no other conclusion but that a defendant is guilty cannot be condoned, no matter how artfully worded."[16] "Such testimony is unfairly prejudicial to the defendant because it invades the exclusive province of the jury."[17]

Generally, a police officer testifying as an expert is permitted to make reasonable inferences based on the evidence and the officer's training and experience.[18] "An opinion as to the guilt of the defendant is particularly prejudicial and improper where it is expressed by a government official, such as a sheriff or a police officer."[19] "The determination of whether testimony constitutes an

---

[14] State v. Cruz, 77 Wn. App. 811, 814, 894 P.2d 573 (1995) (quoting id. at 578).

[15] State v. Black, 109 Wn.2d 336, 348, 745 P.2d 12 (1987).

[16] Cruz, 77 Wn. App. at 814.

[17] State v. Kirkman, 159 Wn.2d 918, 927, 155 P.3d 125 (2007).

[18] State v. Thein, 138 Wn.2d 133, 148, 977 P.2d 582 (1999).

[19] State v. Sanders, 66 Wn. App. 380, 387, 832 P.2d 1326 (1992).

impermissible opinion as to the defendant's guilt depends on the particular circumstances of each case."[20]

Police officer testimony regarding typical criminal activity is not necessarily impermissible. In State v. Cruz, where the defendant was charged with delivery of heroin, the trial court permitted a police officer to testify about "typical" heroin transactions.[21] In closing, the prosecutor argued that Cruz's actions fit the detective's description of the typical transaction.[22] The appellate court held that the detective's testimony did not constitute an impermissible opinion on guilt because it "did not amount to a directive telling the jury what result to reach on the issue of Cruz's guilt or innocence."[23]

Here, as in Cruz, the record does not support Anderson's assertion that the police officers' testimony regarding drug users and drug transactions amounted to an impermissible opinion on guilt. They testified only in general terms based on their training and experience. They did not opine, either directly or by inference, that Anderson's actions were consistent with typical drug transactions with which they were familiar. "The fact that an opinion encompassing ultimate factual issues supports the conclusion that the defendant is guilty does not make the testimony an improper opinion on guilt."[24]

---

[20] Cruz, 77 Wn. App. at 814-15.
[21] 77 Wn. App. 811, 813-14, 894 P.2d 573 (1995).
[22] Id. at 814.
[23] Id. at 815.
[24] Heatley, 70 Wn. App. at 579.

Anderson likens his case to State v. Farr-Lenzini, but that case is distinguishable.[25] The State charged Farr-Lenzini with attempting to elude a pursuing police vehicle.[26] When the State asked the pursuing police officer to give his opinion "as to what the defendant's driving pattern exhibited," the officer responded that the driver "was attempting to get away from me and knew I was back there and refusing to stop."[27] Division Two of this court held that the officer's testimony about Farr-Lenzini's state of mind violated her right to a jury trial because it constituted an opinion about the intent element of the offenses.[28] Here, in contrast, the police officers did not draw a conclusion for the jury regarding whether the facts of Anderson's case met an element of the charged offense.

Anderson further asserts that by the time Officer Kravchun testified, the court came to realize that the State's case was impermissibly based on profiling testimony and responded by more tightly restricting the proper bounds of the police testimony. He contends that this response demonstrates the impropriety of Sergeant Taylor's testimony. The record does not support this assertion. The court consistently ruled that the State could elicit general educational testimony regarding drug use and drug sales, but not that the facts of this case were consistent with those characteristics or with an intent to deliver. In applying this

---

[25] 93 Wn. App. 453, 970 P.2d 313 (1999).

[26] Id. at 458.

[27] Id.

[28] Id. at 463-64.

principle, the court frequently reserved ruling on individual issues pending testimony. This approach was proper.

Closing Argument

Anderson contends a new trial is required because the State committed prosecutorial misconduct during closing argument. "The propriety of a prosecutor's conduct is 'reviewed in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given.'"[29] "In closing argument, a prosecutor is afforded wide latitude to draw and express reasonable inferences from the evidence."[30] To prevail on a claim of prosecutorial misconduct, the defendant bears the burden of establishing that the conduct was both improper and prejudicial.[31] To establish prejudice, the defendant must show "a substantial likelihood that the misconduct affected the jury verdict."[32] "Any allegedly improper statements should be viewed within the context of the prosecutor's entire argument, the issues in the case, the evidence discussed in the argument, and the jury instructions."[33]

---

[29] State v. Reed, 168 Wn. App. 553, 577, 278 P.3d 203 (2012) (quoting State v. Russell, 125 Wn.2d 24, 85-86, 882 P.2d 747 (1994)).

[30] Id.

[31] State v. Thorgerson, 172 Wn.2d 438, 460, 258 P.3d 43 (2011).

[32] State v. Hecht, 179 Wn. App. 497, 319 P.3d 836 (2014).

[33] State v. Dhaliwal, 150 Wn.2d 559, 578, 79 P.3d 432 (2003).

In his closing argument, defense counsel sought to cast doubt on Officer Kravchun's and Sergeant Taylor's memory of events. In rebuttal closing argument, the prosecutor stated:

PROSECUTOR: So consider this. There are two versions you've heard. Any of them make sense of all of this evidence? So think about what the defendant is saying. Think about what the officers are saying. Who has the personal interest in this case? Who has the stakes?

DEFENSE: Your Honor, I'm going to object. It's reversing the burden of proof. Suggesting the defendant has—

COURT: It's argument. . . . [T]hey have the instructions in terms of how they're to apply the testimony of witnesses.

PROSECUTOR: It says you are to consider any personal interest, any bias or prejudice, consider who has the stakes when you consider the credibility. The defendant would have you believe that these officers who don't know him, who's just doing their job assigned to this anticrime team, assigned to this 36 to 3700 block of Smith Avenue, made this whole thing up, put their careers on the line, put their reputations on the line for him.

DEFENSE: I'm going to object. That's not the argument that I made.

COURT: Overruled, counsel.[34]

The State asserts the prosecutor's remarks were not improper because jurors can reasonably infer that an officer would not risk consequences to his

---

[34] RP (July 25, 2018) at 386-87.

career and reputation for fabricating a story and testifying to it during trial. This argument is troubling.

A prosecutor commits misconduct by personally vouching for the credibility of a witness.[35] Improper vouching occurs when the prosecutor expresses a personal belief in a witness's credibility or refers to evidence not presented at trial to support a witness's testimony.[36] It is improper for prosecutors to bolster a police witness's good character even if the record supports such argument.[37]

State v. Jones is instructive.[38] There, the prosecutor argued that a confidential informant who did not testify was credible because the police officers would not have risked their careers by using an unreliable informant:

> And how much sense does it make to you that . . . any narcotics detective would put their own reputation on the line? Their own credibility? Their own integrity of their investigation? Their very livelihood on the line for one silly person who is duping or snookering them somehow?[39]

The appellate court held that these statements improperly bolstered the officer's credibility "by using facts not in evidence, namely, that police . . . would suffer professional repercussions if they used an untrustworthy informant."[40]

---

[35] State v. Ish, 170 Wn.2d 189, 196, 241 P.3d 389 (2010).

[36] Id.

[37] State v. Jones, 144 Wn. App. 284, 293, 183 P.3d 307 (2008).

[38] 144 Wn. App. 284, 183 P.3d 307 (2008).

[39] Id. at 293.

[40] Id. at 293-94.

Here, the prosecutor similarly urged the jury to find that the testifying officers were credible because they would not jeopardize their careers by giving false testimony. And defense counsel did not assert in closing that the officers gave false testimony; he merely questioned the accuracy of their recollections. The prosecutor's arguments were problematic.

But, where the defense fails to object to an improper statement, the error is waived unless the statement is "so flagrant and ill-intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by a curative instruction to the jury."[41] The State contends Anderson failed to preserve the issue because he did not object on the basis that the argument presented facts outside the record or that it bolstered the police officers' credibility. Anderson asserts that he sufficiently preserved the issue by objecting on the basis that the State reversed the burden of proof and mischaracterized his closing argument.

Even assuming that Anderson's objections were sufficient to preserve the error, we conclude that reversal is not required because Anderson has not demonstrated a substantial likelihood of prejudice. At the time of arrest, Anderson was carrying a small box containing 14 identically-packaged bags of methamphetamine in the pants he was wearing. The pants fit him and matched the sweatshirt he was wearing. Anderson's phone also contained multiple threads of text messages showing conversations about drug dealing. Ample physical

---

[41] State v. Brown, 132 Wn.2d 529, 561, 940 P.2d 546 (1997).

evidence corroborated the police officers' testimony. There is no reasonable probability that the prosecutor's improper argument materially affected the outcome of the trial.

Cumulative Error

Anderson asserts that the cumulative effect of the improper opinion testimony and the prosecutorial misconduct entitle him to a new trial. The cumulative error doctrine "applies when a combination of trial errors denies the accused a fair trial, even when any one of the errors taken individually would be harmless."[42] Anderson was affected by only one error, and he failed to demonstrate prejudice. He is therefore not entitled to a new trial.

Affirmed.

_____

WE CONCUR:

_____

_____

_____

---

[42] State v. Salas, 1 Wn. App. 2d 931, 952, 408 P.3d 383 (2018).