# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47932-0-II |
| Respondent, | |
| v. | |
| RICHARD MAXFIELD BARNES, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Richard Maxfield Barnes appeals his conviction and sentence for third degree assault. On appeal, Barnes argues that (1) the prosecutor committed misconduct by (a) commenting on Barnes's right to silence, (b) offering a personal opinion on Barnes's guilt, and (c) misstating the role of the jury; (2) he was denied a fair trial because one of the deputies gave improper opinion testimony; (3) he received ineffective assistance of counsel when his attorney (a) did not seek to exclude evidence of the original crime for which Barnes was arrested, (b) did not object to the alleged prosecutorial misconduct, and (c) did not object to the deputy's opinion testimony; and (4) the sentencing court improperly imposed a legal financial obligation (LFO) of $500 to the Skamania County Sheriff's Department. We affirm Barnes's conviction, but reverse the imposition of the $500 LFO to the Skamania Sheriff's Department and remand for the sentencing court to strike the $500 LFO to the Skamania County Sheriff's Department.

FACTS

Skamania County Sheriff's Deputies Scheyer and Shultz responded to a domestic disturbance call on December 31, 2014, in North Bonneville, Washington.[1] After speaking with a woman, the deputies proceeded to Barnes's trailer, where Deputy Schultz knocked on the door. Barnes answered the door, and the deputies asked him to step outside and answer some questions. Barnes declined the invitation.

Deputy Scheyer described Barnes as "[n]on-compliant," and Deputy Schultz testified that Barnes's "responses were somewhat vague and he was not very forthcoming with any information and not wanting to respond to our questions." Verbatim Report of Proceedings (VRP) (Aug. 10, 2015) at 22, 34. Barnes testified that he told the deputies that he "wasn't interested in talking to them." VRP (Aug. 10, 2015) at 50.

When Barnes attempted to turn back into the trailer, Deputy Scheyer grabbed Barnes's arm in an attempt to arrest him.[2] Deputy Scheyer told Barnes he was under arrest for a domestic violence fourth degree assault. Barnes was able to pull away before the two deputies were able to successfully handcuff Barnes.

While walking Barnes to Deputy Shultz's police vehicle, the deputies testified that Barnes was belligerent, yelling and screaming, making threats, and uttering obscenities. Deputy Scheyer

---

[1] The defense moved *in limine* to exclude any evidence regarding allegations of domestic violence. The trial court granted the defense's motion *in limine*.

[2] Deputy Scheyer testified that she had already obtained probable cause to effectuate Barnes's arrest based on her conversation with the woman before contacting Barnes at his trailer. Deputy Schultz testified that Deputy Scheyer had advised him that there was probable cause to arrest Barnes.

testified that she believed Barnes "was obviously impaired by alcohol" at this time. VRP (Aug. 10, 2015) at 24. Deputy Schultz similarly testified that Barnes "appeared to be intoxicated." VRP (Aug. 10, 2015) at 34. Barnes testified that he consumed the majority, but not all, of a 12-pack of beer before the deputies arrived.

Once the deputies and Barnes reached the police vehicle, the deputies attempted to load Barnes into the back seat. Deputy Schultz testified that Barnes was unwilling to enter the police vehicle on his own. Barnes testified that he was trying to talk to the deputies and they "misconstrued that as [his] resisting." VRP (Aug. 10, 2015) at 51. In attempting to load Barnes into the vehicle, Barnes was facing Deputy Schultz and Deputy Scheyer was off to the side.

Deputy Scheyer testified that in trying to load Barnes into the back seat, Barnes "kinda reared back and went to kick Deputy Schultz in the face. I didn't know how many times he kicked him, but I could see him kick Deputy Schultz in the face." VRP (Aug. 10, 2015) at 26. The kick was "kinda a push kick," and she "was right there when the assault occurred." VRP (Aug. 10, 2015) at 26, 27.

Deputy Schultz testified that "[a]fter lifting [Barnes's] legs into the vehicle, and trying to scoot him into the vehicle, [Barnes] began to kick his legs several times and eventually [Deputy Schultz] was able to get [Barnes] scooted into the vehicle." VRP (Aug. 10, 2015) at 38. During this process, he was kicked in the face "approximately five times." VRP (Aug. 10, 2015) at 38.

Barnes testified that the deputies were trying to close the door but his legs were in the way. He kicked to get himself further into the police vehicle because the door was being closed on his legs. Barnes remembered "kicking at" Deputy Schultz, but not at his face. VRP (Aug. 10, 2015) at 52. Barnes testified that he did not intentionally kick Deputy Shultz in the face.

3

Deputy Scheyer testified that she saw a red mark on Deputy Schultz's face where he had been kicked. Deputy Scheyer took a picture of Deputy Schultz's face showing the red mark, and the picture was admitted at trial.

Barnes remained "aggravated" and "belligerent" during the ride to jail. VRP (Aug. 10, 2015) at 39. Deputy Shultz testified that Barnes called him obscenities and issued threats toward Deputy Schultz during the ride and after arriving at the jail.

In its closing argument, the State argued, "I don't think you have to be unduly sensitive to find it offensive to be kicked in the face five times while doing your job." VRP (Aug. 11, 2015) at 81. The State also argued to the jury, "We have the three prospective [sic] we were given at trial, the two deputies and Mr. Barnes. Your job is to filter through that, decide what occurred that day and apply it to the instructions you'll receive from the court." VRP (Aug 11, 2015) at 82.

During the State's rebuttal, the prosecutor described the deputies' arrest of Barnes as, "after contacting Mr. Barnes, in the de minimis amount of information he was willing to give, they decided to effectuate the arrest." VRP (Aug. 11, 2015) at 91. In concluding its rebuttal argument, the State argued,

> I think you can find beyond a reasonable doubt there was an assault of a law enforcement officer carrying out his duty and, if you do find that all the elements are met beyond a reasonable doubt, ladies and gentlemen, you have a duty to return a verdict of guilty.

VRP (Aug. 11, 2015) at 92.

The jury convicted Barnes of third degree assault for kicking Deputy Schultz in the face.

At Barnes's sentencing, the sentencing court ordered Barnes to pay $500 to the "Skamania County Sheriff Investigation Unit." VRP (Aug. 13, 2015) at 6. This was reflected on the felony

4

judgment and sentence as $500 for "Other fines or costs for: Skamania County Sheriff's Investigative Fund," and is justified on the Felony Judgment and Sentence with the following finding:

> 2.5 **Legal Financial Obligations/Restitution.** The court has considered the total amount owing, the defendant's present and future ability to pay legal financial obligations, including the defendant's financial resources and the likelihood that the defendant's status will change. (RCW 10.01.160). The court makes the following specific findings:
>
> . . . Skamania County Sheriff's Office costs for its emergency response are reasonable RCW 38.52.430.

Clerk's Papers (CP) at 57.

Barnes appeals his conviction and the imposition of the LFO.

## ANALYSIS

A. PROSECUTORIAL MISCONDUCT

Barnes argues the prosecutor committed misconduct when he (1) elicited testimony and argued in rebuttal about Barnes's refusal to speak with the deputies about the domestic violence call; (2) expressed a personal opinion about Barnes's guilt; and (3) misstated the role of the jury.[3] Barnes further argues that the cumulative effect of the misconduct warrants a new trial. We disagree.

1. Legal Principles

To prevail on a claim of prosecutorial misconduct, a defendant must show that the prosecutor's conduct was both improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). First, this court determines whether the prosecutor's conduct was improper. *Id.*

_____

[3] At trial, Barnes did not object to any of the actions he now claims were misconduct.

at 759. If the prosecutor's conduct was improper, the question turns to whether the prosecutor's improper conduct resulted in prejudice. *Id.* at 760. Prejudice is established by showing a substantial likelihood that the prosecutor's misconduct affected the verdict. *Id.* at 760.

If a defendant does not object at trial, he or she is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill-intentioned that an instruction could not have cured any resulting prejudice. *Id.* at 760–61. Under this heightened standard of review, the defendant must show that "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *Id.* at 761 (quoting *State v. Thorgerson*, 172 Wn.2d at 438, 455, 258 P.3d 43 (2011)). In making that determination, this court "focus[es] less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." *Id.* at 762.

In closing argument, prosecutors are "afforded wide latitude to draw and express reasonable inferences from the evidence." *State v. Reed*, 168 Wn. App. 553, 577, 278 P.3d 203, *review denied*, 176 Wn.2d 1009 (2012). Prosecutors may not rely on facts outside the evidence or use arguments calculated to inflame the passions or prejudices of the jury. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012). We do not look at the comment in isolation, but in the context of the total argument, the issues in the case, the evidence, and the instructions given to the jury. *State v. Yates*, 161 Wn.2d 714, 774, 168 P.3d 359 (2007), *cert. denied*, 554 U.S. 922 (2008). We presume the jury follows the trial court's instructions. *State v. Anderson*, 153 Wn. App. 417, 428, 220 P.3d 1273 (2009), *review denied*, 170 Wn.2d 1002 (2010).

2.      Right to Remain Silent

Barnes argues that the prosecutor committed misconduct by eliciting testimony about and commenting on his right to remain silent. Specifically, Barnes asserts it was improper for the prosecution to address his disinclination to speak with the deputies outside of his trailer when the prosecution was (a) eliciting the deputies' testimony, (b) cross-examining Barnes, and (c) making its rebuttal argument. We hold that there was no misconduct because Deputy Scheyer did not comment on Barnes's silence. Also, the testimony about Barnes's disinclination to speak with the deputies did not create the inference that Barnes was guilty of the assault charge involving Deputy Schultz because the testimony consisted of Barnes's unwillingness to speak about a domestic disturbance call, an incident unrelated to the third degree assault charge. And at the time the deputies questioned Barnes, the actions resulting in the third degree assault charge involving the deputy had not yet occurred.

The Fifth Amendment of the United States Constitution and article I, section 9 of the Washington Constitution prohibit using a defendant's pre-arrest silence as substantive evidence of his guilt or to suggest to the jury that the silence was an admission of guilt. *State v. Lewis*, 130 Wn.2d 700, 705, 927 P.2d 235 (1996). A police witness "may not comment on the silence of the defendant so as to infer guilt from a refusal to answer questions." *Id.* But "a mere reference to silence which is not a 'comment' on the silence is not reversible error absent a showing of prejudice." *Id.* at 706–07 (quoting *Tortolito v. State*, 901 P.2d 387, 390 (Wyo. 1995)); *State v. Sweet*, 138 Wn.2d 466, 481, 980 P.2d 1223 (1999). "[C]omment" means that the State uses the defendant's silence to suggest to the jury that the refusal to talk is an admission of guilt. *Lewis*, 130 Wn.2d at 707.

An impermissible comment on silence occurs when the State uses the defendant's silence "as substantive evidence of guilt or to suggest to the jury that the silence was an admission of guilt." *Id.* at 707; *see also State v. Slone*, 133 Wn. App. 120, 128, 134 P.3d 1217 (2006). ("'A comment on an accused's silence occurs when used to the State's advantage either as substantive evidence of guilt or to suggest to the jury that the silence was an admission of guilt.'") (emphasis omitted) (quoting *Lewis*, 130 Wn.2d at 707); *State v. Curtis*, 110 Wn. App. 6, 9, 13, 37 P.3d 1274 (2002) (holding that an officer's testimony that after reading defendant his rights, defendant refused to talk and asked for an attorney was a comment on silence); *State v. Romero*, 113 Wn. App. 779, 785, 54 P.3d 1255 (2002) (holding that testimony that "I read him his Miranda warnings, which he chose not to waive, would not talk to me" was a comment on silence) (footnote omitted). The primary concern is whether the remarks were manifestly intended to comment on the right to silence. *State v. Crane*, 116 Wn.2d 315, 331, 804 P.2d 10 (1991). So long as the focus of the questioning or argument "'is not upon the exercise of the constitutional right itself,' the inquiry or argument does not infringe upon a constitutional right." *State v. Gregory*, 158 Wn.2d 759, 807, 147 P.3d 1201 (2006) (quoting *State v. Miller*, 110 Wn. App. 283, 284, 40 P.3d 692 (2002)).

a. Deputies' testimony

Barnes argues that the prosecutor committed misconduct when he asked Deputy Scheyer to explain what she meant when she testified that Barnes was "non-compliant." Br. of Appellant at 22. Barnes argues the same error occurred when the prosecutor questioned Deputy Schultz about whether Barnes responded after the deputies contacted him at his trailer. We hold that because Deputy Scheyer's testimony did not mention Barnes refusing to speak with the deputies

and Deputy Shultz's testimony did not create an inference that Barnes was guilty of the charged assault, the prosecutor's conduct was not improper.

i. Deputy Scheyer's testimony

During Deputy Scheyer's testimony, the prosecutor asked her what she observed about Barnes's demeanor when he was initially contacted, to which Deputy Scheyer responded, "Non-compliant." VRP (Aug. 10, 2015) at 22. The defense objected, arguing that the answer was conclusive, and the court overruled the objection. The prosecution then asked Deputy Scheyer what she meant by "non-compliant," and she responded that when she "asked him to step out of the trailer so we could speak with him or to show us his hands, he would not do it." VRP (Aug. 10, 2015) at 22. Barnes asserts that this exchange constituted misconduct because it "directly commented" on the "exercise of his constitutional right to silence." Br. of Appellant at 22.

We hold that this was not a comment on Barnes's right to silence because there is no mention of Barnes's refusal to speak. The testimony was that Barnes's was "[n]on-compliant" because he would not step out of the trailer and would not show them his hand. VRP (Aug. 10, 2015) at 22. Because this testimony does not mention Barnes's refusal to speak, we hold that it was not an improper comment on Barnes' right to silence and the prosecutor did not commit misconduct in eliciting this testimony.

ii. Deputy Schultz's testimony

Deputy Shultz testified that he and Deputy Scheyer contacted Barnes and asked to speak with him. The prosecutor then asked, "Did [Barnes] respond?" and Deputy Schultz answered, "His responses were somewhat vague and he was not very forthcoming with any information and not wanting to respond to our questions." VRP (Aug. 10, 2015) at 34. Barnes argues this

constituted misconduct because it was "a direct comment on the right to silence." Br. of Appellant at 23.

For an inference of guilt to be created in this case, Barnes's silence would need to create the inference that Barnes had assaulted Deputy Shultz. *Lewis*, 130 Wn.2d at 707. Here, Deputy Shultz testified that during the initial contact with Barnes on an incident unrelated to the third degree assault charge, Barnes's responses to questions regarding the unrelated incident were "vague" and he "was not very forthcoming with any information" regarding that unrelated incident. VRP (Aug. 10, 2015) at 34. Also, at the time when Deputy Shultz testified that Barnes was giving vague responses, Barnes did not know he would be placed under arrest and the actions resulting in the third degree assault charge had not yet occurred. Thus, Deputy Shultz's testimony referencing Barnes's disinclination to speak with the deputies did not violate Barnes's right to remain silent. Deputy Schultz's testimony merely showed that Barnes did not want to speak with the deputies regarding an incident unrelated to the third degree assault charge, and Barnes indicated he did not want to speak with the deputies before the events precipitating the assault charge occurred. There was no comment on Barnes's silence inferring he was guilty of third degree assault.

To the extent that Barnes argues that this testimony from Deputy Schultz was a comment on the evidence that undermined his credibility and inferred guilt, that argument fails. A comment on the evidence is:

> A statement made to the jury by the judge or by counsel on the probative value of certain evidence. Fed. R. Evid. 105. Lawyers typically make such comments in closing argument, and judges may make such comments in federal court. But most state-court judges are not permitted to do so when examining a witness, instructing the jury, and the like.

BLACK'S LAW DICTIONARY 304 (9th ed. 2009). *See also Lewis*, 130 Wn.2d at 707 ("A comment on an accused's silence occurs when used to the State's advantage either as substantive evidence of guilt or to suggest to the jury that the silence was an admission of guilt.").

Here, the challenged testimony from Deputy Schultz was that he perceived Barnes as "vague" and "not very forthcoming with any information" regarding that unrelated incident. VRP (Aug. 10, 2015) at 34. This is not a comment on the evidence because it does not address the probative value of any evidence presented against Barnes on the third degree assault charge involving Deputy Schultz.

Similarly, to the extent Barnes argues that this testimony from Deputy Schultz was a comment on Barnes's silence that undermined his credibility and inferred guilt, that argument also fails.

Here, the focus of the questioning by the prosecutor and Deputy Schultz's responses was not focused on Barnes's pre-arrest right to silence. Rather, the purpose of the line of question was to explain the sequence of events that led to the assault of Deputy Schultz after Barnes had been placed under arrest. Viewed in context, Deputy Schultz's responses that Barnes challenges on appeal do not constitute impermissible comments on Barnes's right to silence.

b. Cross-Examination of Barnes

Barnes argues the prosecutor committed misconduct in cross-examining him about his disinclination to speak with the deputies. Specifically, Barnes assigns error to the State's question: "Is it your testimony, when asked to talk about the incident, your response is, I don't want to; and you turned around and went back into the trailer. Is that correct?" VRP (Aug. 10, 2015) at 54.

11

For the same reasons that we hold that Deputy Shultz's answers regarding Barnes's disinclination to speak with the deputies was not a comment on Barnes's right to remain silent, we hold that the prosecutor's cross-examination of Barnes's was not an improper comment on his right to remain silent. The prosecutor asked Barnes about his unwillingness to talk to the deputies regarding the domestic dispute. Barnes's disinclination to speak to the deputies about the domestic dispute does not infer that Barnes was guilty of subsequently assaulting Deputy Shultz. Therefore, we hold that the prosecutor did not violate Barnes's right to remain silent when asking about Barnes's unwillingness to speak with the deputies about the domestic violence incident.

c. State's Rebuttal

Finally, Barnes argues the prosecutor improperly commented on his right to remain silent during the State's rebuttal closing argument. Specifically, Barnes assigns error to the portion of the State's rebuttal where the prosecutor said, "after contacting Mr. Barnes, in the de minimis amount of information he was willing to give, they decided to effectuate the arrest." VRP (Aug. 11, 2015) at 91.

We hold that this was not an improper comment on Barnes's right to remain silent. As discussed above, the "de minimis" information Barnes provided the deputies was in response to their questions about an incident unrelated to the assault charge, and at the time of the deputies' questioning, Barnes's actions resulting in the assault charge involving the deputy had not yet occurred. Therefore, we hold that the prosecutor did not improperly comment on Barnes's right to remain silent during the State's rebuttal closing argument.

2. Expressing a Personal Opinion as to Guilt

12

No. 47932-0-II

Barnes argues that "[t]he prosecutor repeatedly expressed his personal opinion that Mr. Barnes intentionally kicked [Deputy] Schultz and was guilty of assault." Br. of Appellant at 25. Specifically, Barnes points to the State's closing where the prosecutor argued,

> Now, in deciding whether or not something is offensive, "touching or striking is offensive if the touching or striking would offend an ordinary person who's not unduly sensitive." I'll leave to you. It's your decision to be a reasonable person. *I don't think you have to be unduly sensitive to find it offensive to be kicked in the face five times while doing your job*.

VRP (Aug. 11, 2015) at 81 (quoting Jury Instruction 7) (emphasis added). And Barnes points to the conclusion of the State's rebuttal where the prosecutor argued,

> Ladies and gentlemen, I believe if you look at all the facts, you'll find that you can develop an abiding belief in the charge. *I think you can find beyond a reasonable doubt there was an assault of a law enforcement officer carrying out his duty* and, if you do find that all the elements are met beyond a reasonable doubt, ladies and gentlemen, you have a duty to return a verdict of guilty. Thank you.

VRP (Aug. 11, 2015) at 92 (emphasis added).

It is improper for prosecutors to express personal opinions on the ultimate issue of guilt independent of the evidence presented. *State v. McKenzie*, 157 Wn.2d 44, 53, 134 P.3d 221 (2006). But prosecutors may make arguments that, based on the evidence presented, the accused is guilty. *Id.* "'In other words, there is a distinction between *the individual opinion of the prosecuting attorney, as an independent fact,* and *an opinion based upon or deduced from the testimony in the case.'*" *Id.* (quoting *State v. Armstrong*, 37 Wash. 51, 55, 79 P. 490 (1905)). Thus, "'While it is improper for a prosecuting attorney, in argument, to express his individual opinion that the accused is guilty, independent of the testimony in the case, he may nevertheless argue from the testimony that the accused is guilty, and that the testimony convinces him of that fact.'" *Id.* (quoting *Armstrong*, 37 Wash. at 54). As such, the prosecutor's comments must be considered in the context

13

of the case, including the elements of the charged crime, the issues argued, and the evidence presented. *Id.* at 54.

Here, the prosecutor argued in the State's closing that the jury should find Barnes guilty based on evidence presented and the elements of the charged crime. The prosecutor directed the jury's attention to, and recited, the jury instruction defining assault. The prosecutor then argued that Deputy Scheyer's and Deputy Shultz's testimony that Barnes had kicked Deputy Shultz in the face five times met the definition of assault in the jury instruction, but that the jury would need to make that decision for itself. We hold that such an argument does not rise to the level of misconduct because the prosecutor's argument asked the jury to draw the conclusion that Barnes was guilty from the evidence presented.

Also, the prosecutor concluded the State's rebuttal by asking the jury to look at all the facts and find that Barnes assaulted Deputy Shultz. Again, we hold that this argument does not amount to prosecutorial misconduct because the prosecutor argued that by "look[ing] at all the facts," the jury should come to the conclusion that "all the elements are met" to find that Barnes assaulted Deputy Shultz. VRP (Aug. 11, 2015) at 92. The prosecutor did not express a personal opinion about Barnes's guilt.

3. Misstating the Role of the Jury

Barnes argues the prosecutor committed misconduct by misstating the role of the jury. Specifically, Barnes contends the prosecutor told the jurors "it was their job to decide what actually happened during the events at issue," Br. of Appellant at 28, and cited the following from the State's closing argument:

> We have the three prospective [sic] we were given at trial, the two deputies and Mr. Barnes.  Your job is to filter through that, decide what occurred that day and apply it to the instructions you'll receive from the court.

VRP (Aug 11, 2015) at 82.

In *State v. Anderson*, 153 Wn. App. 417, 429, 220 P.3d 1273 (2009), *review denied*, 170 Wn.2d 1002 (2010), the prosecutor repeatedly suggested in closing argument that the jury's job was to "declare the truth" in the case.  This court determined that the prosecutor's repeated request that the jury "declare the truth" was improper: "A jury's job is not to 'solve' a case.  It is not, as the State claims, to 'declare what happened on the day in question.'  Rather, the jury's duty is to determine whether the State has proved its allegations against a defendant beyond a reasonable doubt."  *Id.* at 429 (internal citation omitted).[4]

Here, the prosecutor's argument was not a directive for the jury to "declare the truth," but was instead a charge to weigh the three witnesses' perspectives in deciding what occurred and then to apply the court's instructions to the evidence.  Thus, we hold that the prosecutor's charge to the jury did not rise to the level of that in *Anderson* and was not improper.

    4.      Cumulative Error

---

[4] Subsequent to this court's holding in *Anderson*, it issued *State v. Curtiss*, 161 Wn. App. 673, 701–02, 250 P.3d 496, *review denied*, 172 Wn.2d 1012 (2011), which suggested that the "declare-the-truth" statements made by prosecutor's during closing arguments were not improper.  Since this court's decision in *Curtiss*, this court has revisited "declare-the-truth" statements made by prosecutors and determined that the statements were improper, following *Anderson*, 153 Wn. App. at 429, rather than *Curtiss*.  *See e.g.*, *State v. Walker*, 164 Wn. App. 724, 733, 265 P.3d 191 (2011)*, remanded*, 175 Wn.2d 1022 (2012); *State v. McCreven*, 170 Wn. App. 444, 473, 284 P.3d 793 (2012), *review denied*, 176 Wn.2d 1015 (2013).

Barnes argues that the cumulative effect of the prosecutor's misconduct denied him the right to a fair trial. Under the cumulative error doctrine, we will reverse a trial court verdict when it appears reasonably probable that the cumulative effect of errors materially affected the outcome, even when no one error alone mandates reversal. *State v. Russell*, 125 Wn.2d 24, 93, 882 P.2d 747 (1994), *cert. denied*, 514 U.S. 1129 (1995). Because we hold the prosecutor did not commit misconduct, we hold no errors accumulated to warrant reversal.

B.     IMPROPER OPINION TESTIMONY

Barnes argues he was denied a fair trial when Deputy Scheyer testified that she witnessed Barnes assault Deputy Schultz. Barnes points to Deputy Scheyer's testimony where she said she remembered standing by Deputy Schultz's side and "was right there when the assault occurred." VRP (Aug. 10, 2015) at 26. Barnes contends that this was improper opinion testimony that was particularly prejudicial because Deputy Scheyer is a police officer, so her testimony carried a special aura of reliability. We hold that Deputy Scheyer's testimony was likely impermissible, but Barnes fails to show the manifest constitutional error required for reversal.[5]

A lay witness may offer opinion testimony if helpful to the jury and not informed by special expertise. ER 701. "Testimony in the form of an opinion or inferences otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." ER 704. However, opinion testimony as to a criminal defendant's guilt "'invad[es] the exclusive province of the [jury]'" to decide the facts of the case. *State v. Demery*, 144 Wn.2d 753, 759, 30 P.3d 1278

---

[5] A determination of whether the comment was impermissible is not necessary for the resolution of this issue. Thus, we use the term "likely."

(2001) (plurality opinion) (quoting *City of Seattle v. Heatley*, 70 Wn. App. 573, 577, 854 P.2d 658 (1993), *review denied*, 123 Wn.2d 1011 (1994)).

To determine whether opinion testimony is impermissible, courts consider the five *Demery* factors: "(1) 'the type of witness involved,' (2) 'the specific nature of the testimony,' (3) 'the nature of the charges,' (4) 'the type of defense, and' (5) 'the other evidence before the trier of fact.'" *Demery*, 144 Wn.2d at 759 (quoting *Heatley*, 70 Wn. App. at 579); *see also State v. Quaale*, 182 Wn.2d 191, 199-200, 340 P.3d 213 (2014) (holding the same by a majority of the court). Testimony by law enforcement officers often carry "a special aura of reliability." *State v. Kirkman*, 159 Wn.2d 918, 928, 155 P.3d 125 (2007).

Here, applying the *Demery* factors, (1) a sheriff's deputy; (2) testified that she witnessed Barnes "assault" Deputy Schultz when she saw Barnes "rear[ ] back . . . to kick Deputy Shultz in the face. . . . [and] could see him kick Deputy Shultz in the face"; (3) in a case where Barnes was charged with the third degree assault of Deputy Shultz; (4) where Barnes claimed it was not assault because he did not intend to kick Deputy Shultz in the face; and (5) the other evidence before the jury was Deputy Shultz's testimony that Barnes kicked him in the face approximately five times, Deputy Scheyer's testimony that she saw a red mark on Deputy Schultz's face where he had been kicked, and a picture of Deputy Schultz's face showing the red mark where he had been kicked. VRP (Aug. 10, 2015) at 26-28, 38. Despite the other evidence presented to the jury, Deputy Scheyer's testimony was likely impermissible because it opined on the ultimate issue of Barnes being guilty of assaulting Deputy Shultz and had the added aura of reliability because Deputy Scheyer was a sheriff's deputy.

17

However, even if Deputy Scheyer's testimony was impermissible, Barnes's challenge fails because Barnes did not object to preserve the issue for appeal and fails to show a manifest error affecting a constitutional right. In a footnote, Barnes argues that this was a manifest error affecting his constitutional rights under the Sixth and Fourteenth Amendments, and therefore, he is allowed to raise this error for the first time on appeal under RAP 2.5(a)(3). Barnes does not provide further argument or citation to support his assignment of error for the first time on appeal. Thus, the alleged error is waived. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

RAP 2.5(a)(3) allows an appellant to assign error to a "manifest error affecting a constitutional right" for the first time on appeal. "This exception is a narrow one, and we have found constitutional error to be manifest only when the error caused actual prejudice or practical and identifiable consequences." *State v. Montgomery*, 163 Wn.2d 577, 595, 183 P.3d 267 (2008). Instructions to the jury are part of determining whether the defendant was prejudiced by improper opinion testimony. *Id.*

In *Montgomery*, our Supreme Court considered whether the appellant had established actual prejudice stemming from a police officer's improper opinion testimony. *Id.* at 596. The court reasoned that despite the improper testimony, the members of the jury had been properly instructed that they were the sole judges of witness credibility and that they were not bound by the witnesses' opinions. *Id.* at 595-96. The court also reasoned that had the appellant raised objections to the testimony below, it was likely that the objections would have been sustained and curative instructions given. *Id.* at 596. Accordingly, our Supreme Court held that actual prejudice had not been established. *Id.*

Here, the jury was instructed that the jury members were "the sole judges of the credibility of each witness" and that when considering a witness's testimony, it could consider:

> the opportunity of the witness to observe or know the things he or she testifies about; the ability of the witness to observe accurately; the quality of a witness's memory while testifying; the manner of the witness while testifying; any personal interest that the witness might have in the outcome or the issues; any bias or prejudice that the witness may have shown; the reasonableness of the witness's statements in the context of all of the other evidence; and any other factors that affect your evaluation or belief of a witness or your evaluation of his or her testimony.

CP at 43 (Jury Instruction 1). In addition, the trial court sustained Barnes's objection when Deputy Scheyer began to testify to issues outside the scope of admissible evidence, so it is likely that an objection to Deputy Scheyer's testimony would have been sustained and a curative instruction given. Also, as noted above, Deputy Schultz testified that Barnes kicked him in the face, there was evidence showing the injury Deputy Schultz sustained on his face as a result of the kick, and Barnes admitted he kicked Deputy Schultz and only denied he did so intentionally. In light of all the evidence, Barnes does not establish actual prejudice or actual and identifiable consequences. Therefore, Barnes fails to show the manifest constitutional error required for reversal.

C.    INEFFECTIVE ASSISTANCE OF COUNSEL

Barnes argues his trial counsel rendered deficient representation and but for that deficient performance, the outcome of Barnes's trial would have been different. Specifically, Barnes asserts his trial counsel was deficient for failing to (1) seek to exclude evidence of the domestic violence allegation, (2) object to comments relating to right to remain silent, and (3) object when Deputy Scheyer expressed a personal opinion on his guilt. Barnes further asserts that the cumulative error of his trial counsel's deficient performance changed the outcome of his trial. We disagree.

19

The right to effective assistance of counsel is afforded criminal defendants by the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution. *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 816 (1987). To establish ineffective assistance of counsel, Barnes must show both deficient performance and resulting prejudice. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Deficient performance occurs when counsel's performance falls below an objective standard of reasonableness. *State v. Stenson*, 132 Wn.2d 668, 705, 940 P.2d 1239 (1997), *cert. denied*, 523 U.S. 1008 (1998). To show prejudice, Barnes must demonstrate that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *McFarland*, 127 Wn.2d at 335. If Barnes fails to satisfy either prong, the court need not inquire further. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

There is a strong presumption of effective assistance, and Barnes bears the burden of demonstrating the absence of a legitimate strategic or tactical reason for the challenged conduct. *McFarland*, 127 Wn.2d 336. Decisions on whether and when to object are "classic example[s] of trial tactics." *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662, *review denied*, 113 Wn.2d 1002 (1989). "'Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal.'" *State v. Johnston*, 143 Wn. App. 1, 19, 177 P.3d 1127 (2007) (quoting *Madison*, 53 Wn. App. at 763). It is a legitimate trial tactic to forego an objection in circumstances where counsel wishes to avoid highlighting certain evidence. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 714, 101 P.3d 1 (2004). Where a defendant bases his ineffective assistance of counsel claim on trial counsel's failure to object,

the defendant must show that the objection would likely have succeeded. *State v. Gerdts*, 136 Wn. App. 720, 727, 150 P.3d 627 (2007).

  1.     Failure to Seek to Exclude Evidence

Barnes argues he received ineffective assistance of counsel when his attorney failed to seek to exclude evidence of the domestic violence allegation that precipitated the deputies' arrival at his trailer and his subsequent arrest. The defense moved *in limine* to exclude any evidence regarding allegations of domestic violence. The trial court granted the defense's motion *in limine*. Therefore, we hold that this argument has no merit because defense counsel did move to exclude the allegations of domestic violence.

Barnes also argues that no legitimate trial tactic could justify his attorney's failure to object to testimony that referenced domestic violence. We assume, without deciding, that defense counsel's failure to object to testimony that referenced domestic violence was deficient. However, Barnes fails to show any prejudice resulting from defense counsel's lack of objection.

To establish prejudice, Barnes must demonstrate that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *McFarland*, 127 Wn.2d at 335. We hold that Barnes is unable to make such a showing. The evidence showed that Barnes had been drinking when the deputies contacted him at night on New Year's Eve. After Barnes declined to speak with the deputies, the deputies grabbed Barnes to arrest him. During the arrest, Barnes resisted and pulled away, but that the two deputies were eventually able to get both Barnes's hands cuffed behind his back. Barnes was angry at being arrested, believed he was being arrested for no reason, yelled and screamed obscenities and threats during the arrest, and resisted being put in the police vehicle. Deputy Scheyer described Barnes's

kicks at Deputy Shultz as "a push kick," Barnes described the kicks as his attempts to get into the police vehicle, and Deputy Shultz described being kicked in the face five times by Barnes. VRP (Aug. 10, 2015) at 27. Deputy Scheyer saw the red mark on Deputy Schultz's face where he had been kicked and took a picture of it. On this evidence, we hold that Barnes is unable to establish that the outcome of his trial would have been different had his attorney objected to the references to domestic violence.

2.      Failure to Object to the Prosecution's Comments on Barnes's Right to Remain Silent

Barnes argues he received ineffective assistance of counsel when his attorney failed to object to the prosecution taking testimony and arguing in rebuttal on Barnes' disinclination to speak to the deputies. We hold this argument fails because the prosecutor's conduct was not improper.

Where a defendant bases his or her ineffective assistance of counsel claim on trial counsel's failure to object, the defendant must show that the objection likely would have succeeded. *Gerdts*, 136 Wn. App. at 727. Therefore, we examine the underlying claim of prosecutorial misconduct.[6] Because we hold that the prosecutor did not commit misconduct, defense counsel was not ineffective in failing to object to conduct that was not improper. Accordingly, we hold that Barnes

---

[6] As stated above, to prevail on a claim of prosecutorial misconduct, a defendant must show that the prosecutor's conduct was both improper and prejudicial. *Emery*, 174 Wn.2d at 756. First, this court determines whether the prosecutor's conduct was improper. *Id.* at 759. If the prosecutor's conduct was improper, the question turns to whether the prosecutor's improper conduct resulted in prejudice. *Id.* at 760-61. Prejudice is established by showing a substantial likelihood that the prosecutor's misconduct affected the verdict. *Id.* at 760.

did not receive ineffective assistance of counsel for his attorney's failure to object to the prosecution's comments.

### 3. Failure to Object to Deputy's Statement of Personal Opinion

Barnes argues he received ineffective assistance of counsel when his attorney failed to object to Deputy Scheyer's testimony that Barnes had assaulted Deputy Schultz. Barnes points to Deputy Scheyer's testimony where she said she remembered standing by Deputy Schultz's side and she "was right there when the assault occurred." VRP (Aug. 10, 2015) at 26. Barnes contends that this was improper opinion testimony that was particularly prejudicial because Deputy Scheyer is a police officer, and as such, her testimony carried a special aura of reliability. We hold that while defense counsel likely rendered deficient performance in failing to object,[7] Barnes's fails to demonstrate that there is a reasonable probability the outcome of the proceeding would have been different had an objection been made.

As discussed above, the evidence of Barnes's assault on Deputy Schultz was overwhelming. Deputy Schultz testified that Barnes kicked him in the face five times; Deputy Scheyer saw a red mark on Deputy Schultz's face where he had been kicked; there was a picture of Deputy Schultz's face showing the red mark; and Barnes admitted he was kicking at Deputy Schultz. On this evidence we hold that Barnes is unable to establish that the outcome of his trial would have been different had his attorney objected to Deputy Scheyer's testimony that she was standing right next to Deputy Schultz "when the assault occurred." VRP (Aug. 10, 2015) at 26. Because Barnes does not demonstrate that there is a reasonable probability the outcome of the

---

[7] *See* discussion in Section B, *supra* (explaining why Deputy Scheyer's testimony was likely objectionable).

proceeding would have been different, we hold Barnes's fails to establish he received ineffective assistance of counsel.

4.      Cumulative Error

Barnes argues that the cumulative effect of his attorney's failures results in prejudice requiring a new trial.  As stated above, under the cumulative error doctrine, the appellate court will reverse a trial court verdict when it appears reasonably probable that the cumulative effect of errors materially affected the outcome, even when no one error alone mandates reversal.  *Russell*, 125 Wn.2d at 93.  Because we hold that defense counsel did not make multiple errors and Barnes fails to show the outcome of the trial would have been different, we hold that Barnes's cumulative error argument fails.

D.      LEGAL FINANCIAL OBLIGATIONS

Barnes argues the sentencing court erred in ordering him to pay a fee, as part of his legal financial obligations (LFOs), that was not authorized by statute.  Specifically, Barnes assigns error to the sentencing court's imposition of $500 to the "Skamania County Sheriff Investigation Unit," and the court's reliance on RCW 38.52.430 as authority for the imposition of the fine.  VRP (Aug. 13, 2015) at 6; CP at 57.  Barnes argues that "the plain language of the statute requires *both* that the defendant's intoxication cause the event giving rise to the emergency response *and* that the defendant sustain a conviction (or received a deferred prosecution) for one of the enumerated offenses," and those enumerated offenses are specific driving offenses, not third degree assault. Br. of Appellant at 37.  Although Barnes raises the issue for the first time on appeal, we exercise our discretion to reach the issue and hold the sentencing court erred in assessing the $500 fee to

the Skamania County Sheriff's Department. *See State v. Blazina*, 182 Wn.2d 827, 832, 344 P.3d 680 (2015).

RCW 38.52.430 is titled, "Emergency response caused by person's intoxication—Recovery of costs from convicted person," and provides in pertinent part:

> A person whose intoxication causes an incident resulting in an appropriate emergency response, and who, in connection with the incident, has been found guilty of or has had their prosecution deferred for (1) driving while under the influence of intoxicating liquor or any drug, RCW 46.61.502; (2) operating an aircraft under the influence of intoxicants or drugs, RCW 47.68.220; (3) use of a vessel while under the influence of alcohol or drugs, RCW 79A.60.040; (4) vehicular homicide while under the influence of intoxicating liquor or any drug, RCW 46.61.520(1)(a); or (5) vehicular assault while under the influence of intoxicating liquor or any drug, RCW 46.61.522(1)(b), is liable for the expense of an emergency response by a public agency to the incident.

At sentencing, the State requested "$500.00 Skamania County Sheriff's Investigative Fund Assessment" be added to the mandatory LFOs that were requested. VRP (Aug. 13, 2015) at 2. The State did not cite the basis for this request. The sentencing court assessed a fee of "$500.00 to the Skamania County Sheriff Investigation Unit" without further discussion or explanation. VRP (Aug. 13, 2015) at 6. In the Felony Judgment and Sentence, paragraph 2.5 said:

> **Legal Financial Obligations/Restitution.** The court has considered the total amount owing, the defendant's present and future ability to pay legal financial obligations, including the defendant's financial resources and the likelihood that the defendants status will change. (RCW 10.01.160). The court makes the following specific findings:
> [X] (Name of agency) Skamania County Sheriff's Office costs for its emergency response are reasonable RCW 38.52.430 (effective August 1, 2012).

CP at 57.

We hold that the sentencing court erred in obligating Barnes to pay $500 to the Skamania County's Sheriff's Department. This is not one of the mandatory LFOs, and neither the State nor

the sentencing court cited valid authority for its imposition. *See e.g. State v. Lundy*, 176 Wn. App. 96, 102, 308 P.3d 755 (2013) (holding that the legislature divested sentencing courts of the discretion to impose the mandatory LFOs of "victim restitution, victim assessments, DNA fees, and criminal filing fees"). The authority cited in the felony judgement and sentence was RCW 38.52.430, which only applies when intoxication necessitates the emergency response *and*, in connection to the response, the defendant is convicted of being under the influence of alcohol or drugs while (1) driving a vehicle; (2) operating an aircraft; (3) using of a vessel; (4) committing vehicular homicide; or (5) committing vehicular assault. Barnes was not convicted of, nor did he receive deferred prosecution for, any of these crimes, and no argument was made that Barnes intoxication was what necessitated the deputies' responses in the first place. Therefore, we hold the sentencing court erred in imposing an LFO of "$500.00 to the Skamania County Sheriff Investigation Unit." VRP (Aug. 13, 2015) at 6.

## APPELLATE COSTS

Barnes requests that if the State substantially prevails on appeal, that this court decline to impose appellate costs because he is indigent. The trial court found that Barnes lacked sufficient funds to prosecute his appeal and granted him a right to review at public expense.

RCW 10.73.160(1) vests the appellate court with discretion to award appellate costs. Under RAP 14.2, that discretion may be exercised in a decision terminating review. We presume a party remains indigent "throughout the review" unless the trial court finds otherwise. RAP 15.2(f). In light of Barnes's indigent status and our presumption under RAP 15.2(f) that he remains indigent "throughout the review" unless the trial court finds that his financial condition has improved, we exercise our discretion and waive appellate costs.

CONCLUSION

We hold that (1) the prosecutor did not commit misconduct, (2) Barnes fails to show the manifest constitutional error required to reverse on the deputy's improper opinion testimony, and (3) Barnes did not receive ineffective assistance of counsel warranting reversal. We also exercise our discretion to consider Barnes's challenge to the LFOs imposed and hold that the sentencing court erred in imposing the LFO of $500 to the Skamania County Sheriff's Department. Accordingly, we affirm the conviction, but we reverse the $500 LFO imposed for the Skamania County Sheriff's Department and remand for the sentencing court to strike the imposition of $500 to the Skamania County Sheriff's Department.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Johanson, J.

Maxa, A.C.J.